The plaintiff instituted this action for breach of contract and for unjust enrichment to recover the sum of $7314.76 claimed to be due and owing from the defendants for architectural services. The court rendered judgment in favor of the plaintiff against both the named corporate defendant and the individual defendant Arch Fracker. From this judgment both defendants have appealed.
The defendants have pursued four claims of error. They posit that the trial court erred: (1) in failing to grant their motion for nonsuit; (2) in concluding that there was an express contract; (3) in finding that either of the defendants was liable for the debt; and (4) in finding that the plaintiff had proved the reasonable value of the services.
The relevant facts are as follows: In 1975, the individual defendant, Arch Fracker (hereinafter Fracker), contacted the plaintiff and requested that it perform architectural services for three construction projects: Heritage Acres Condominiums in Chatham, New Brunswick; Trap Falls Condominiums in Trumbull; and Commercial Development Store and Office Complex in Trumbull. The Heritage Acres project was owned by a Canadian corporation, Heritage Ltd. The Commercial Development project was owned by the defendant Arch Fracker Plumbing 
Heating Contractor, Inc. (hereinafter the corporation or the corporate defendant). Fracker was the president and controlling shareholder of both of those corporations. The third project, Trap Falls Condominium, was owned by one Kenneth Samu.
The plaintiff's charges for these projects were as follows: Heritage Acres, $5145.91; Trap Falls, $2457.45; and Commercial Development, $1211.40; for a total of $8814.76. For all three of these jobs the plaintiff billed the individual defendant Fracker. Fracker never complained *Page 377 
to the plaintiff that the bills were made out to him individually. Payments totaling $1500 were made to the plaintiff by checks drawn on the account of the corporate defendant. Although Fracker did not complain about the fact that he was billed individually, he testified that he did complain about the amount of the bills. Conversely, Paul Antinozzi, the plaintiff's corporate secretary, denied ever receiving such a complaint and further testified that, after a meeting with Fracker, Fracker agreed to pay the entire amounts.
The trial court found that there was an express agreement between the plaintiff and Fracker and that the terms of the agreement were that, in return for the architectural drawings, Fracker would pay the plaintiff the reasonable value of its services. In addition, the court found that Fracker was using the corporation as a device to avoid liability and, therefore, it "in effect pierced the corporate veil." On the basis of these findings, the court awarded the plaintiff the sum of $7314.76[1] plus interest at 8 percent.
The defendants' first three claims of error are interwoven. That is, they claim first that Fracker was not individually responsible for any debt owed to the plaintiff. Second, they claim that the corporation was responsible only for the debt incurred in conjunction with the Commercial Development project and that it paid this debt. Third, the defendants claim that, at the conclusion of the plaintiff's case, they were entitled to an evidentiary nonsuit[2] due to the plaintiff's failure to prove an express agreement between itself and either defendant. We disagree.
"Whether a contract exists is a question of fact for the court to determine." Randolph Construction Co. *Page 378 
v. Kings East Corporation, 165 Conn. 269, 277,334 A.2d 464 (1973). Material facts may be proved by circumstantial evidence. "[P]roof of material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact." Dickson v. Yale University,141 Conn. 250, 253-54, 105 A.2d 463 (1954).
At the conclusion of the plaintiff's case the court had evidence before it that a meeting occurred between the plaintiff and Fracker, that after this meeting the plaintiff performed certain services in conjunction with all three projects which included the preparation of architectural drawings, that these drawings were delivered to Fracker, that the corporate secretary of the plaintiff, along with Fracker, visited the Canadian job site, that the plaintiff billed Fracker individually for all of its services, that partial payment was made for the services rendered, that this partial payment, i.e., $1500, exceeded the billing of $1211.40 attributable to the Commercial Development project and, finally, that Fracker agreed to pay the outstanding bill.
On the basis of this evidence we hold that the court could have reasonably found that the plaintiff performed all of its services pursuant to an express agreement with the individual Fracker to perform the requested services for all three projects and that Fracker would pay a sum equal to the reasonable value of the services so rendered.
The further claim of error, that the court erred in finding Fracker individually responsible for the debt, because he was acting as an agent for another, is also without merit. The trial court noted that the plaintiff billed Fracker individually and that he never complained about this. In addition, Fracker made no *Page 379 
attempt to have the plaintiff bill the corporate entities or Kenneth Samu instead of himself. Further, the corporate secretary of the plaintiff testified that at all times he thought he was dealing with Fracker individually.
It is the duty of an agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose, not only the fact that he is acting in a representative capacity, but also the identity of his principal. The person with whom the agent deals is not bound to inquire whether or not the agent is acting as such. "`If he would avoid personal liability, the duty is on the agent to disclose his principal and not on the party with whom he deals to discover him.'" Diamond Match Co. v. Crute, 145 Conn. 277, 279,141 A.2d 247 (1958). Accordingly, we hold that since Fracker neither complained about the bills being sent to him as an individual nor, according to the testimony of the plaintiff's corporate secretary, disclosed that he was acting on behalf of a corporation or Kenneth Samu, the court did not err in holding him individually liable to the plaintiff. Our conclusion is not affected by the fact that the partial payment was made by checks drawn on the corporate account. As noted in Diamond Match Co. v. Crute, supra, 278-79, payment by corporate checks is not sufficient notice to the plaintiff that he is dealing with a corporation.
We further hold, however, that since the court found that the express agreement was between the individual Fracker and the plaintiff, and did not find that there was any express agreement between the plaintiff and the corporation, it was error to render judgment against the corporation.[3] *Page 380 
The final claim of error pursued by the defendant is that the trial court erred when it found the bill for services rendered to be reasonable. Basically, the defendants claim that there was no relevant testimony from which the trial court could make such a finding. Again we disagree.
At the trial, the plaintiff's corporate secretary, a registered architect who had been employed by the plaintiff since 1973 with several years experience in the local area and who had performed some of the work on the subject project, testified that the amount charged was in accordance with the standard fees normally charged by the plaintiff for its services. In addition, detailed bills which itemized the work done, the hours spent on the project and the hourly rate charged, and which the plaintiff had previously submitted to Fracker were admitted into evidence as full exhibits.
We hold that this evidence, coupled with the fact that there was a partial payment made and that there was testimony that Fracker agreed to pay the entire bill, supports the trial court's conclusion that the charges were reasonable. We are not disturbed by the fact that the plaintiff's witness was not asked whether these charges were reasonable because the aforementioned subordinate facts were sufficient to produce a reasonable belief in the mind of the trial court either (1) that Fracker agreed to the reasonableness of the charges or (2) that the charges were in fact reasonable. See Dickson v. Yale University,141 Conn. 250, 253-55, 105 A.2d 463 (1954).
Finally, as to the interest awarded, we hold that the court should properly have awarded interest at the rate *Page 381 
of 6 percent from the maturity date of the debt to September 30, 1979, and at the rate of 8 percent thereafter. We so hold because the 8 percent rate did not become effective until October 1, 1979. Public Acts 1979, No. 79-364. Since the court's memorandum of decision is silent as to when the debt matured, as to this issue, a remand is in order.
 There is error in part; the judgment is set aside and the case is remanded with direction to render judgment for the defendant Arch Fracker Plumbing Heating Contractor, Inc., and for a recalculation of the interest in accordance with this opinion.
In this opinion DALY and COVELLO, Js., concurred.