MOSES J. NEIDITZ ET AL. *v.* MORTON S. FINE AND ASSOCIATES, INC.
(2275)

DANNEHY, C.P.J., HULL and DUPONT, Js.

Argued February 29—decision released July 24, 1984

*Louis B. Blumenfeld,* with whom, on the brief, were *Vincent J. Dowling* and *Mary L. Beardsley,* for the appellant (defendant).

*Jerome E. Caplan,* for the appellees (plaintiffs).

DUPONT, J. The plaintiffs[1] seek the recovery from the defendant, a professional corporation engaged in the

---

[1] The defendant claims that the plaintiffs did not prove that they all had title to the realty involved in this action on the dates relevant to the action, 1972 and 1973. All eight plaintiffs did business as Morama Associates. It is agreed by the parties that four of them were the record owners of the real estate in 1972, and three were deeded the property in 1976. An exhibit upon which the trial court relied indicates that seven of the plaintiffs were owners in 1973. The trial court found that the defendant had admitted in its answer to the plaintiffs' complaint that all eight were owners in 1972

business of land surveying and civil engineering, of damages for the alleged negligent preparation of a boundary survey of the plaintiffs' land. The plaintiffs allege that errors in a site plan, which delineated the boundaries, courses and dimensions of their land and which had been prepared by the defendant for submission to the town of West Hartford in connection with an application for a zone change, resulted in economic loss to them. A state referee, *Hon. Alva P. Loiselle,* sitting as the trial court, awarded damages to the plaintiffs for the increased costs of developing their realty which it found were causally connected to the errors in the site plan[2] and awarded statutory interest at the rate of 8 percent from June 11, 1973. From this judgment, the defendant appeals.[3]

The defendant, on appeal, claims that the trial court erred (1) in finding the defendant negligent without expert testimony as to its standard of care and in finding negligence in the performance of a 1972 contract; (2) in awarding some damages without evidence that

and 1973. The issue of ownership is not directly involved in this case and therefore proof of title of each plaintiff is not required. See *Velsmid* v. *Nelson,* 175 Conn. 221, 229, 397 A.2d 113 (1978). The result of any decision in this case will not be affected by which plaintiffs are proper parties or which parties are members of Morama Associates or Morama Corporation. *Rohm* v. *Hill,* 18 Conn. Sup. 258, 259 (1953).

[2] The original application for a zone change to permit the construction of commercial and office buildings was submitted to the town of West Hartford in April of 1972. In connection therewith, the plaintiffs submitted plans prepared by the defendant, including a site plan dated March 21, 1972. A public hearing was held and the application was granted. No appeal was taken. A second application was submitted after the town of West Hartford ruled that the change of zone was a nullity because of errors in the plans. The second application was approved subject to the compliance by the plaintiffs with eight conditions. An appeal from the approval of the second application was taken and subsequently dismissed. It is the expense of that appeal, the expenses of the delay incident thereto, and the expenses incident to compliance with the eight conditions which the plaintiffs claim as damages and which are the subject of this appeal.

[3] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

they were actually incurred by the plaintiffs; (3) in awarding property taxes as damages; (4) in awarding damages arising out of conditions imposed on the approval of the plaintiffs' second application for a zone change; and (5) in awarding interest.[4] The defendant also claims that it has been denied a full and fair review of its appeal because two of its trial exhibits have been lost.[5]

The trial court found the following: the site plan prepared by the defendant and dated March 21, 1972, contained the words "Note - Boundary Based on Field Survey of Morton S. Fine & Assoc. August, 1955"; the site plan was in error; a new site plan was prepared by the defendant correcting the error after the town of West Hartford deemed the error to be a material one requiring a second application for a zone change; the approval of the second application was based upon compliance with eight conditions; an appeal was taken from the second application, and dismissed; the defendant did field work at the premises; the parties did not agree that the defendant was to perform particular services but that the defendant was engaged in 1972 to depict, describe and locate the boundaries of the realty; and the defendant was negligent in 1972 in its depiction of the plaintiffs' land on its survey. The trial court

---

[4] The defendant has briefed ten issues, having raised fourteen issues in its amended preliminary statement of issues. One of these issues, loss of the exhibits, is discussed in footnote 5, infra. Another, the awarding of damages to the plaintiffs without proof of ownership, is discussed in footnote 1, supra. The other remaining issues discussed in its brief have been consolidated for purposes of review by this court.

[5] The missing exhibits relate to the memoranda of employees of the defendant. One of the exhibits related to whether the defendant was told to spend a minimum amount of money in preparing its work and the other, to whether the plaintiffs intended to develop only one portion of the land owned by them. Even if these exhibits were available for appellate review, the transcript and the other exhibits make it clear that their availability would not make a material difference in the outcome. *Stern & Co.* v. *International Harvester Co.*, 146 Conn. 42, 47, 147 A.2d 490 (1958).

further found that the plaintiffs informed the defendant in 1972 that a site plan was needed for an application for a zone change, and that the defendant's principal stockholder had been a member of the planning and zoning commission of West Hartford and was familiar with the requirements of applications for such zone changes.

The defendant argues that it did not contract with the plaintiffs in 1972 to perform a boundary survey but contracted, instead, to perform the minimum work necessary to comply with the town's regulations for a zone change application. The defendant's claim is that it did not contract to do any topographic or field work for the plaintiffs in February of 1972 and, therefore, it could not have been negligent in the preparation of its site plan of March, 1972. The defendant argues, in essence, that whatever error was found on that plan originated in 1955 when the defendant originally contracted with the plaintiffs to prepare a boundary plot of the land. The plaintiffs, however, do not claim that the defendant was negligent in 1955 but, rather, that it was negligent in the preparation of the 1972 site plan.[6] The trial court made specific findings that the parties entered into a contract in 1972, and that the defendant's negligence occurred in 1972 when it prepared the site plan and certified it as being substantially correct based on a field survey. The trial court also found that the defendant knew or should have known that an exterior angle had not been checked, either by reference to an existing deed or in the field,

---

[6] The plaintiffs alleged in their complaint that they relied on a site plan prepared by the defendant dated March 21, 1972, and that the defendant negligently failed to survey accurately the plaintiffs' land and negligently failed to establish accurately the correct boundaries and topography of that land. They allege that their damages arose from this negligence and from the breach of their 1972 contract pursuant to which the defendant agreed to furnish an accurate survey of their land for use in their submission to the town of West Hartford of a zone change application.

and that the defendant knew that the site plan was requested for use in an application for a zone change. The facts found are supported by the evidence and are not clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). On such facts, no statute of limitations barred suit by the plaintiffs. See General Statutes § 52-577.

The defendant claims that the court could not find the defendant negligent in 1972 because no expert testimony was produced as to the standard of care required in the preparation of the 1972 map. An expert witness for the plaintiffs did testify, however, that in his opinion a land surveyor acting as such in 1972 would not be in conformity with the standard of due care for registered land surveyors in Connecticut if he did not go into the field but, nevertheless, prepared the site plan in question. Although the defendant produced other experts who testified that the work of the defendant in 1972 did conform to the standard of care required of land surveyors in Connecticut, it was for the trier to determine the credence to be given to the testimony of the various experts, in view of the other evidence proffered by the parties. *Bond* v. *Benning,* 175 Conn. 308, 313, 398 A.2d 1158 (1978).

The remaining claims of error relate to the damages found by the trier to be due, and to the interest awarded on the judgment. The general rule for the measure of damages is that the damages are to equate that monetary amount which will place the injured party in the same position it would have been in had the defendant not breached its contract. *Danpar Associates* v. *Somersville Mills Sales Room, Inc.,* 182 Conn. 444, 446, 438 A.2d 708 (1980). Eight conditions were imposed by West Hartford in order for the plaintiffs to obtain the zone change. These conditions were not required when the first application for a zone change was granted and are causally connected to the negligence

of the defendant.[7] But for the defendant's negligence, the plaintiffs would not have had to comply with the conditions. One of the plaintiffs was obliged to give a surety bond to the town in order to guaranty the implementation of some of the conditions. These conditions mandated the construction of a traffic lane, a sewer line, and sidewalks. Although not all of the work and expense incident to such construction had been completed and paid at the time of trial, the plaintiffs were bound by the surety bond to complete the work. The costs in 1972 totalled $30,898 and were found by the trial court to be fair and reasonable. The surety bond was in the amount of $31,000. Prospective damages are recoverable if they are reasonably certain to occur. *Craney* v. *Donovan,* 92 Conn. 236, 245, 102 A. 640 (1917).

The trial court also found that the plaintiffs incurred additional architectural and legal fees, in the total amount of $3597, as a result of the defendant's negligence.[8] Due to the delay between the first approval of the zone change and the dismissal of the appeal from the second approval, the plaintiffs paid property taxes in the amount of $7877.69. In its memorandum of decision on the defendant's motion to open the judgment on the ground that the damages awarded were excessive, the trial court found that during the period of delay, no practical use could be made of the plaintiffs' real estate nor could it be readied for use. On these facts, the property taxes were paid without any expec-

[7] A defendant may be liable in negligence for the breach of duty which arises out of a contractual relationship. *Urban* v. *Hartford Gas Co.,* 139 Conn. 301, 304, 93 A.2d 292 (1952).

[8] The defendant claims, on appeal, that the award of the attorney's fees for the second zone change application was error because there was no evidence as to their actual amount and no evidence that they were paid. The defendant did not object to the testimony at trial that the charge for legal services for such representation was $2500. Whether they were actually paid is irrelevant. They were due.

tation of profit from the real estate. Damages arising from a delay in completing construction because of the negligence of a defendant are compensable. See *Walter Kidde Constructors, Inc.* v. *State,* 37 Conn. Sup. 50, 82, 434 A.2d 962 (1981).

The trial court awarded interest to the plaintiffs at the rate of 8 percent per annum from June 11, 1973, the date the approval of the plaintiffs' second application for a change of zone became final, to the date of the judgment. The defendant claims that the statutory rate of interest was 6 percent until October 1, 1979, when the statutory rate became 8 percent,[9] and that the higher rate of interest cannot be applied retroactively because to do so would be to increase the defendant's substantive liability. It is the defendant's contention that interest should be 6 percent per annum from June 11, 1973, to October 1, 1979.[10] The trial court concluded that General Statutes § 37-3a may be applied retroactively and it permitted interest in this case at the rate of 8 percent per annum from the date the damages became payable.[11]

The allowance of interest as an element of damages is within the discretion of the trial court. *Bertozzi* v. *McCarthy,* 164 Conn. 463, 467, 323 A.2d 553 (1973). Whether to include interest as damages is an equitable determination for the trial court and interest may be awarded at the statutory rate from the time the money becomes due. *Marcus* v. *Marcus,* 175 Conn. 138,

[9] In pertinent part, General Statutes § 37-3a provides: "[I]nterest at the rate of eight per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable . . . ."

[10] The defendant, in its amended preliminary statement of issues, claimed error in applying interest to damages which were not liquidated. The defendant has not briefed the issue and it is deemed abandoned. *Czarnecki* v. *Plastics Liquidating Co.,* 179 Conn. 261, 262 n.1, 425 A.2d 1289 (1979).

[11] No claim has been made by the defendant that a retroactive application of the statute would render it unconstitutional.

146, 394 A.2d 727 (1978). The trial court correctly determined that the damages were due on June 11, 1973, and that interest began to accrue from that date. *Williams* v. *Vista Vestra, Inc.,* 178 Conn. 323, 334, 422 A.2d 274 (1979). The question, however, is not when interest begins to run but at what statutory rate.

Two Connecticut cases decided by the Appellate Session of the Superior Court held, without discussion, that interest when properly awarded in the discretion of the trial court should be calculated at the statutory rate of 6 percent until October 1, 1979, and at the statutory rate of 8 percent thereafter. *Antinozzi Associates* v. *Arch Fracker Plumbing & Heating Contractor, Inc.,* 39 Conn. Sup. 375, 380–81, 465 A.2d 333 (1983); *Krol* v. *Goldring,* 38 Conn. Sup. 610, 614–15, 458 A.2d 15 (1982). Our analysis of this issue leads us to a contrary holding in the present case.

Two other Connecticut cases dispose of the issue but do not resolve it. In *Walter Kidde Constructors, Inc.* v. *State,* supra, former Chief Justice Charles S. House, as a state trial referee, reiterated the proposition that prejudgment interest is an element of fair compensation, whether an action seeks damages in tort or contract, and included in the judgment rendered, without discussion, interest from October 1, 1974, at the rate of 8 percent. In *Vincenzi* v. *Cerro,* 186 Conn. 612, 422 A.2d 1352 (1982), interest was awarded at the rate of 6 percent for money due prior to October 1, 1979, since the plaintiff had conceded that an 8 percent rate should not have been applied prior to that date.

There is a paucity of cases nationwide on the issue of which statutory rate of interest applies to prejudgment damages where one statute amends the rate set by another statute during the period the money is found to have been due to the date of judgment, and where

the second statute is silent as to whether it may be applied retroactively. The decisions are not in accord. Note, 4 A.L.R.2d 932.

The intent of the legislature in raising the permissible statutory interest rate to 8 percent on money due was obviously to close the gap between prevailing interest rates and the statutory interest rate of 6 percent. The higher interest rate is a legislative recognition of the fiscal obsolescence of a 6 percent interest rate. The legislature may retroactively cure inequities in statutes as long as vested rights are not disturbed. *Enfield Federal Savings & Loan Assn.* v. *Bissel,* 184 Conn. 569, 440 A.2d 220 (1981). The defendant had no vested right in a ceiling on the statutory rate of interest payable. Discretionary interest rates are a matter of statutory grace and may be changed by the legislature as it sees fit. 45 Am. Jur. 2d, Interest and Usury § 11.

The purpose of General Statutes § 37-3a is to provide compensation for a delay in obtaining money which rightfully belongs to the plaintiff. *Porter* v. *Clerk of the Superior Court,* 368 Mass. 116, 330 N.E.2d 206 (1975). Money awarded at a later time, in some financial climates, is worth less than if it had been paid when due. Inflationary erosion dissipates the effect of receiving, as damages, interest calculated at the old rate and makes the new rate a necessary "retroactive" tool of the court. Furthermore, the statute itself provides that the interest rate of 8 percent is to apply to the detention of damages after they became payable. Whether the legislature increases or decreases an interest rate, its goal is the same—to put the plaintiff, at the discretion of the court, on a monetary parity with others who receive interest at the rates prevailing at the time of the award.

Since one of the purposes of allowing interest as damages, in cases where the parties themselves have not

established a particular interest rate, is to accomplish justice in a particular situation and since the inclusion of interest is discretionary with the court in accord with the principles of equity, the decision to award interest at a greater or lesser statutory percentage rate should be left with the trial court. See 11 Williston, Contracts (Jaeger 3d Ed.) § 1412. Rather than analyze a statute which provides for discretionary interest rates in civil actions as affecting substantive or procedural rights in order to determine whether it may be applied retroactively in those instances in which the legislature has not been explicit in the language of the statute, courts should analyze the particular proceedings affected by the change in the interest rate. See *Porter* v. *Clerk of the Superior Court,* supra. That judicial discretion, however, should not be exercised arbitrarily nor should it be immune from appellate review.

"Retroactive" and "prospective" can become words of artificiality when there is a judicial attempt to match them with the words "procedural" and "substantive" in the context of some statutes. A legislative enactment granting a court the discretion to award interest is such a statute. Where procedure ends and substance begins is an impalpable line. Rather than analyze a statute, the purpose of which is to make the plaintiff financially whole in a particular economic environment, in terms of whether it is "only" procedural or, alternatively, in terms of whether it is of the "higher" genus of substantive, such a statute should be analyzed in terms of its purpose. If whether any interest at all should be awarded as prejudgment damages is optional with the trial court, the rate at which it accrues, as set by the legislature, should also be within the ambit of choice of the trial court.

On the facts of this case, it was not an abuse of discretion for the trial court to determine that the statu-

tory 8 percent interest rate which became effective in 1979 should be applied to money due since 1973.

There is no error.

In this opinion the other judges concurred.