[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED APRIL 9, 1996
I. INTRODUCTION
This case raises important questions involving the award of prejudgment interest in an ad valorem tax appeal.
An appeal from the Board of Tax Review of the Town of West Hartford (the "Town") was brought by Sears, Roebuck Co. ("Sears") to this court pursuant to Conn. Gen. Stat. § 12-117a. The Town, in its assessment, had valued the property in question at $13,045,000. In a memorandum of decision filed on October 18, CT Page 2851-BB 1995, I found the true and accurate value of the subject property to be $12,106,000. I ordered the assessor and the Board of Tax Review to correct the assessment against Sears to conform with my decision. No other relief was awarded. No costs were taxed to either party. The subject of prejudgment interest was not raised by either party and was not discussed in the opinion. Neither party filed an appeal.
On January 30, 1996, Sears filed a motion entitled "Motion Seeking Enforcement of Money Judgment as to Payment of Interest." The motion, purporting to rely on Conn. Gen. Stat. §§ 12-117a,37-3a 52-350f(2), requests "enforcement of money judgment entered by this court on October 18, 1995 solely with respect to the payment of interest of approximately $24,875.21 on the whole amount of the tax overpayment resulting from the judicially determined overassessment of [the subject] property."
The hearing on the motion just described generated much initial confusion as to what exactly Sears is seeking. It is quite clear that there is no "money judgment" to "enforce." A "money judgment" is a "judgment of a court by which a defendant is required to pay a sum of money in contrast to a decree or judgment of equity in which the court orders some other type of relief." Black's Law Dictionary 1005-06 (6th ed. 1990). In this case, the court plainly ordered "some other type of relief." Sears, it turned out, did not argue to the contrary at the hearing. Instead, it argued for an award of interest pursuant to Conn. Gen. Stat. § 12-117a. It consequently requested that its motion be construed as a motion to modify the judgment of October 18, 1995. Although the Town opposes the motion on the merits, it did not oppose this procedural request.
The parties presented extensive arguments on the question of whether interest should or should not be awarded under § 12-117a. They also presented competing expert witnesses on the question of what rate of interest ought to be awarded in the event that interest is awarded at all. A lack of clarity in the relevant statutes makes this an exceptionally complicated case. Several questions of first impression are presented. These questions have an importance that goes far beyond this case. The first question that must be addressed is the appropriate procedure for seeking interest under § 12-117a. It must next be decided whether an award of interest under § 12-117a is mandatory or discretionary. It must finally be decided what rate of interest should be awarded. These questions will be addressed CT Page 2851-CC in turn.
II. PROCEDURE
The procedural vehicle by which Sears claims relief is a motion filed in the pre-existing tax appeal rather than a new action. Is this proper? If so, what exactly should the motion seek? The answers to these questions must be divined from a statute that is less than clear on these points.
Conn. Gen. Stat. § 12-117a is a lengthy statute. The questions presented in this case, however, involve a relatively brief two-sentence provision. That provision is as follows:
 If the assessment made by the board of tax review is reduced by [the] court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs.
The first sentence just quoted requires the Town to "reimburse" the applicant for overpayment of taxes, interest, and costs. This requirement becomes operational only "[i]f the assessment made by the board of tax review is reduced by [the] court." Consequently, it can only occur after the court has rendered its decision on the tax appeal. If the Town fails to comport with this requirement, the applicant must again come to court to seek relief. Must this be by way of a new action? The first two words of the second sentence quoted suggest that the answer is no. The court is required to enter judgment in favor of the applicant "[u]pon motion." This language can most sensibly be construed as referring to a posttrial motion filed in the existing tax appeal brought pursuant to § 12-117a. If the legislature had intended to require the filing of a new action, it could easily have done so. It did not. By filing a motion seeking interest, Sears has complied with the statute.
But what exactly should the motion seek? The statute is unclear on this point. The second sentence quoted requires the CT Page 2851-DD court to "enter judgment" on the motion. But is this "judgment" a new judgment on the motion for interest or a modification of the old judgment on the § 12-117a appeal? The answer to this question is important for at least two reasons. First, if the old judgment is to be opened, the motion to open must be filed within four months. Conn. Gen. Stat. § 52-212a. Sears has, as it happens, filed its motion within the four month period, but some future applicants might not be so timely. Second, the time to appeal the original § 12-117a appeal has already expired. If a new judgment on the motion for interest is entered, that is the only judgment that could now be appealed. If the old judgment on the § 12-117a appeal is opened and modified, it is likely that the entire judgment could then be appealed.
Although the statutory text is unhelpful on this point, I have concluded that a § 12-117a motion for interest must seek to modify the existing § 12-117a judgment. The reasoning of two recent cases is persuasive on this point. In Osterneck v.Ernst Whinney, 489 U.S. 169 (1989), the Supreme Court of the United States held that a motion for discretionary prejudgment interest filed after the entry of judgment constituted a motion under Fed.R.Civ.P. 59 to alter or amend the judgment. It distinguished posttrial motions for attorneys fees, which are not considered motions to alter or amend the judgment; see White v.New Hampshire Department of Employment Security, 455 U.S. 445
(1982); on two different grounds. First, prejudgment interest is an element of compensation, unlike attorneys fees which at common law were regarded as an element of costs. 489 U.S. at 175. Second, unlike the question of attorneys fees, a motion for prejudgment interest does not raise issues wholly collateral to the main cause of action. Instead, the court must to some extent examine the merits of the underlying controversy. Id. at 175-76. Finally, the court observed that its decision helped to "further the important goal of avoiding piecemeal appellate review of judgments." Id. at 177. The court noted that its decision applied to both mandatory and discretionary awards of prejudgment interest. Id. at 176 n. 3.
In Balf Co. v. Spera Construction Co., 222 Conn. 211,608 A.2d 682 (1992), the Supreme Court of Connecticut adopted the reasoning of Osterneck in a case involving Connecticut procedure. The court stated that a plaintiffs right to a recovery of prejudgment interest "is part of its claim to be made whole."222 Conn. at 215. Furthermore, "[a]n appeal after a resolution of all the issues" will result in a more comprehensive and better CT Page 2851-EE informed appellate review. Id.
Although Osterneck and Balf are not technically dispositive of this case, since the statutory language in question here was not being reviewed, the reasoning of those cases is persuasive. An award of prejudgment interest is designed, at least in theory, to make the plaintiff whole. Moreover, the Osterneck/Balf rule will help avoid piecemeal appellate litigation. Consequently, a motion for interest under § 12-117a constitutes a motion to open the original judgment.
As already mentioned, the motion in question here was filed within four months of the original judgment, so it is not barred by Conn. Gen. Stat. § 52-212a. Conn. Gen. Stat. § 52-259c
requires a fee of sixty dollars to be paid to the clerk upon the filing of any motion to open or modify any civil judgment of the Superior Court. No such fee has been paid in this case. As already discussed, however, there was, at the time of filing, considerable confusion as to what the appropriate procedural vehicle was. Section 52-259c allows the fee to be waived by the court. It is waived here in the interests of justice.
With this procedural background resolved, the merits of the case may now be considered.
III. THE RIGHT TO INTEREST
The next question that must be considered is whether an award of interest under § 12-117a is mandatory or discretionary. The award of prejudgment interest has traditionally been considered as a discretionary judicial function. See Bernhard v.Rochester German Insurance Co., 79 Conn. 388, 398, 65 A. 134
(1906). It is well established that this is the case when prejudgment interest is requested pursuant to Conn. Gen. Stat. § 37-3a. See, e.g., Nor'easter Group, Inc. v. ColossaleConcrete, Inc., 207 Conn. 468, 482, 542 A.2d 692 (1988). Conn. Gen. Stat. § 12-117a, however, establishes a process that is neither discretionary nor, at least initially, judicial. The provision in question has not been judicially construed. When that provision is considered in light of well established canons of statutory construction, it becomes clear that its command is mandatory.
It is helpful, in this context, to repeat the two sentences of § 12-117a in question: CT Page 2851-FF
 If the assessment made by the board of tax review is reduced by [the] court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs.
The word "shall" is used in each of the two sentences. It is used twice in the first sentence. If an assessment is reduced by the court, the applicant "shall" be reimbursed by the Town for any overpayment of taxes, interest and costs. At its option, the applicant "shall" be granted a tax credit for such amount. (Sears has not exercised that option here.) The second sentence provides that the court, upon motion, "shall," in the event of overpayment, enter judgment in favor of the applicant for the overpayment, interest, and costs.
It has, of course, long been established that the word "shall," when used by the legislature, can sometimes mean "may."State v. Doe, 149 Conn. 216, 228-29, 178 A.2d 271 (1962). But it is equally well established that this is not invariably the case. Our Supreme Court has recently recounted the criteria for determining whether a statute is mandatory or directory:
 "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience . . . If it is a matter of substance, the statutory provision is mandatory. If however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words . . . Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply." (Citations omitted: internal quotation marks omitted.) Jones v. Mansfield Training School,
CT Page 2851-GG 220 Conn. 721, 727, 601 A.2d 507 (1992).A reliable guide in determining whether a statutory provision is directory or mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after noncompliance with the provision.
Katz v. Commissioner of Revenue Services, 234 Conn. 614, 617,662 A.2d 762 (1995).
The use of this test establishes that the payment of interest under § 12-117a is mandatory. The payment of interest is "the thing to be accomplished." A legislative provision for the allowance of interest is a law of substance rather than procedure. Utilicorp United, Inc. v. Director of Revenue,785 S.W.2d 277, 278 (Mo. 1990). Section 12-117a is a statute quite different from the statute found directory in Katz. The Katz
statute, Conn. Gen. Stat. § 12-515, required the commissioner of revenue services to determine the validity of a refund claim within ninety days. The court ruled that the ninety day period was a matter of convenience, not substance. A similar ruling would be appropriate if Conn. Gen. Stat. § 12-117a specified that the Town should reimburse the applicant for overpayment of taxes, interest, and costs within ninety days of the court's decision. In that case, the ninety day period would be a matter of convenience, not substance. But the requirement to pay interest itself, in contrast, is a matter of substance. The applicant has a substantive right to that interest if the criteria of the statute are satisfied.
Two other considerations reinforce this conclusion. First, the initial command of the statute is not to the court but to theTown. If the assessment is reduced by the court, the Town is directly commanded to reimburse the applicant. The courts, as mentioned, have traditionally enjoyed discretion in the award of interest. No such tradition exists with regard to towns. The fact that the command of the statute is directed to towns strongly suggests that the equitable discretion of the courts is not being invoked.
Finally, the first statutory sentence quoted, which commands the Town to reimburse the applicant, is followed by a second sentence that commands the court to enter judgment in favor of the applicant, "[u]pon motion." The second sentence essentially invalidates any noncompliance by the Town with the first CT Page 2851-HH sentence. As Katz observes, this is a "reliable guide" in determining that the statutory provision is mandatory.234 Conn. at 617.
For these reasons, I conclude that the payment of interest under § 12-117a is mandatory.
IV. THE RATE OF INTEREST
Although Conn. Gen. Stat. § 12-117a directs that the Town pay the applicant "interest," it is silent as to the rate of interest that should be paid. The parties agree, however, that the appropriate rate of interest is dictated by Conn. Gen. Stat. § 37-3a. That statute provides, in relevant part, that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." Our Supreme Court has held that tax appeals fall within the definition of "civil actions." Loomis Institute v. Town of Windsor, 234 Conn. 169,180-81, 661 A.2d 1001 (1995). Since the manifest purpose of prejudgment interest under § 12-117a is to compensate an applicant for a wrong, I agree with the parties that § 37-3a
provides the only statutory referent for the appropriate interest rate. See Nielsen v. Wisniewski, 32 Conn. App. 133, 139-40,628 A.2d 25 (1993).
At this point, unhappily, agreement between the parties and the court ends. Both parties construe the statutory phrase "interest at the rate of ten per cent a year, and no more" as setting a ceiling but not a floor. They jointly argue that the court is free under the statute to set an interest rate of less than ten per cent and that the statute merely bars the court from setting a rate higher than that figure. Going beyond this, each party has submitted an expert witness who has given a factual opinion that the appropriate interest rate is something less than ten per cent. (Sears' expert opined that the appropriate rate is 9.35%. The Town's expert countered with an opinion of 5.15%.) Although this united front of the parties, their experienced counsel, and their expert witnesses inspires some trepidation, I have reluctantly come to the conclusion that they are wrong. The plain language and long history of § 37-3a persuade me that the interest rate commanded by the statutory language is not only "no more" than ten per cent but it is also no less.
To begin with, the statutory language in question is emphatic CT Page 2851-II rather than permissive. Although it is true that the legislature could have simply said "interest at the rate of ten per cent a year" rather than "interest at the rate of ten per cent a year, and no more," it could also have said "interest at a rate of no more than ten per cent a year." It did not. The observation of the Court of Appeals of Maryland in construing a similarly worded intestacy statute is pertinent. "Why the words and no more' are found in the statute may occasion diverse opinions. The probability is that they are there out of abundant caution."Kendall v. Mondell, 10 A. 240, 240 (Md. 1887).
The history of § 37-3a leads to a similar conclusion. Although § 37-3a itself was enacted in 1972; see 1972 Conn. Acts 292, § 1; the language in question here (except for the actual rate of interest) has been unchanged since the 1875 revision to the General Statutes. See Conn. Gen. Stat. tit. 18, ch. 5, § 2 (1875). The background of the 1875 revision strongly suggests that the legislature intended its phraseology to be emphatic rather than permissive.
While Connecticut courts have awarded interest since very early times; see Selleck v. French, 1 Conn. 32 (1814) (Swift, J.); the first statute allowing prejudgment interest was passed in 1873. That statute provided, "That in all suits in law or equity now pending, or which may hereafter be brought for the recovery of moneys loaned, no greater rate of interest than seven per cent. per annum shall be recovered or allowed for the time after the money loaned becomes due." 1873 Conn. Pub. Acts ch. 87, § 2. The 1875 revision changed this phraseology substantially. That revision stated that, "Interest at the rate of seven per cent. a year, and no more, may be recovered and allowed in civil actions, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable." Conn. Gen. Stat. tit. 18, ch. 5, § 2 (1875). (Emphasis in original.) The phraseology of the statute has remained substantially unchanged since that time. GlobeInvestment Co. v. Barta, 107 Conn. 276, 279, 140 A. 202 (1928).
A comparison of the 1873 and 1875 versions of the statutory text leaves no doubt that the legislature intended to alter permissive language to make it emphatic. The 1873 statute allowed "no greater rate of interest than seven per cent. per annum." This phraseology plainly allowed the kind of flexibility that the parties seek under the current statute. Seven per cent was the ceiling but not the floor. Two years after its enactment, CT Page 2851-JJ however, this language was altered to "[i]nterest at the rate of seven per cent. a year, and no more." If this alteration means anything, it means that what formerly had been a ceiling had become a floor as well.
The position taken by the parties is not only inconsistent with the language of § 37-3a and its statutory history but with the consistent judicial application of that statute in the now rather considerable period of time since its enactment. In spite of the fact that § 37-3a and its predecessors have been judicially considered on numerous occasions for over a century, neither court nor counsel has discovered a single case in which any court has even suggested that it has the authority to impose a rate of interest lower than that stated in the statute. It appears, in fact, that the argument has never even been made. While this means that the question is not foreclosed as a matter of precedent, it also suggests that generations of Connecticut attorneys and jurists have shared a common assumption about the statute since its enactment. Such an assumption should be overthrown only with considerable caution.
Another factor is important in this analysis as well. The legislature has affirmatively acted to raise and lower the stated statutory interest rate on a number of occasions. As already mentioned, the interest rate in the 1875 revision was seven per cent. In 1877, this rate was lowered to six per cent. 1877 Conn. Pub. Acts ch. 151, § 2. In 1979, it was raised to eight per cent. 1979 Conn. Acts 79-364, § 2. Finally, in 1983, it was increased to ten per cent. 1983 Conn. Acts 83-267, § 1. These alterations prove, if proof were needed, that when the legislature concludes that the statutory rate is either too high or too low, it is fully capable of changing the rate.
These legislative changes have also led to the judicial precedent most pertinent to the point in issue here. In Neiditzv. Morton S. Fine Associates, Inc., 199 Conn. 683, 508 A.2d 438
(1986), our Supreme Court considered the question as to whether the 1979 legislation, raising the rate from six to eight percent, could be applied retroactively. The trial court in Neiditz found that the right to prejudgment interest in that case had accrued in 1973. Judgment, however, did not enter until 1980. The trial court awarded eight percent interest for the entire period. The Appellate Court affirmed, reasoning that "since the inclusion of interest is discretionary with the court in accord with the principles of equity, the decision to award interest at a greater CT Page 2851-KK or lesser statutory percentage rate should be left with the trial court." Neiditz v. Morton S. Fein Associates, Inc., 2 Conn. App. 322,332, 479 A.2d 249 (1984). The Supreme Court reversed. It stated that, "[a]lthough the allowance of prejudgment statutory interest as an element of damages is within the discretion of a trial court . . . we disagree with the Appellate Court'sconclusion that a court has similar discretion with regard to theapplicable rate of interest." 199 Conn. at 691. (Emphasis added.) In addition to holding that the 1979 legislation was not retroactive, the court explained that "[t]he statutory rate of interest embodied in § 37-3a presumably reflects the legislature's view of the rate of interest that would have been obtainable while the money was being wrongfully withheld." Id. at 691-92.
Although Neiditz is distinguishable from the present case because the trial court in Neiditz had simply chosen between two competing statutory rates and because it erred by imposing a rate that was too high rather than one that was too low, the reasoning of Neiditz is nevertheless dispositive for two reasons. First, the Supreme Court expressly disavowed the notion that a court has "discretion with regard to the applicable rate of interest."199 Conn. at 691. Second, the court declined to view the statutory rate as merely a ceiling. Rather, that rate is "the legislature's view of the rate of interest that would have been obtainable while the money was being wrongfully withheld." Id. at 692. As the expert witnesses opined in the instant case, that view may be erroneous as a matter of fact, but it is not so clearly erroneous that it can be disregarded as a matter of law. Instead, that view must be acknowledged and applied.
For these reasons, I conclude that the rate of interest to be awarded under Conn. Gen. Stat. § 12-117a is ten per cent a year.
V. CONCLUSION
For the foregoing reasons, Sears must be awarded interest at the rate of ten per cent a year. The parties shall submit proposed orders within ten days of the date of this decision. If the parties are unable to agree on the terms of the order, a hearing on those terms will be scheduled by the court. The original judgment of the court will thereafter be modified accordingly. CT Page 2851-LL
BLUE, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 2851-GGG