[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Procedural Background
CT Page 9950
This is an action brought in four counts by the plaintiff, Advanced Financial Services, Inc. (AFS), a mortgage lender licensed in Connecticut, against the defendants, Associated Appraisal Services, Inc. of East Hartford (AAS), a licensed real estate appraisal company and against its principal owner and president, Gary Brooke. The action against a contractual employee of Associated Appraisal Services, Stephen Shore, was withdrawn during the trial of this case.
The plaintiff seeks damages against the defendants for the loss it sustained as a result of an appraisal of real property the defendants made on behalf of the plaintiff. The plaintiff alleges that the appraisal was negligently, recklessly and fraudulently made, violating a contract between the parties and further violating the Connecticut Unfair Trade Practices Act, General Statutes §§ 42-110a, et. seq. (CUTPA).
The defendants have denied the plaintiff's allegations and further have set forth four special defenses, including the statute of limitations, failure to mitigate damages, contributory negligence, and collateral estoppel, all of which will be discussed below.
 Factual Background
In early 1995, the plaintiff agreed to make a mortgage loan to Frank S. Sottile who was purchasing a home then owned by one Kenneth Assad. The home was then under construction in Southington. The loan was to be in the amount of $650,000.
The plaintiff contemplated selling the loan to Countrywide Funding Corp. (Countrywide). According to its own practice and as required by Countrywide, the plaintiff, in May 1995, hired the defendants AAS and Brooke to appraise the property. The appraisal was done by Stephen Shore, an independent contractor, who reported the results to Mr. Brooke. An appraisal report was issued by the defendants, purportedly signed by Shore and Brooke, but in actuality, signed only by Brooke.
The report assigned a value of $1,100,000 to the property "subject to completion per plan and specifications."
Prior to closing the loan, the plaintiff asked Brooke to reinspect the property because it could not close the loan unless construction was completed.
In response to this request, the defendant Brooke again asked Shore to inspect the property. Shore revisited the premises and observed that not only had no further work been done, but also that the property had been damaged by vandalism. He reported his findings to Brooke. CT Page 9951
Notwithstanding this report, Brooke prepared, signed and delivered to the plaintiff a document entitled "Satisfactory Completion Certificate" which contained the following recital:
 "I certify that I have reinspected subject property, the requirements or conditions set forth in the appraisal report have been met, and any required repairs or completion items have been done in a workmanlike manner."
The report, purportedly signed also by Shore was in fact, signed only by Brooke who, without authorization, signed Shore's name.[1]
Relying on the appraisal, AFS closed the loan on June 2, 1995 in the amount of $650,000. It thereupon assigned the mortgage to Countrywide. By agreement, AFS fully guaranteed the loan to Countrywide.
Brooke claimed at trial that AFS knew the property was not completed but told him to send them the satisfactory completion certificate notwithstanding.
Later in 1995, the Sottile loan went into default. The plaintiff asked Countrywide to handle the foreclosure action, which it did. the judgment obtained found a debt due the plaintiff of $722,646.30 and a fair market value of the property in the amount of $552,000.
The plaintiff duly watched over the property and the foreclosure action. Pursuant to its agreement with Countrywide it repurchased the loan and paid Countrywide a negotiated sum of $461,499.58, although Countrywide had claimed a loss of $544,091.25. The plaintiff seeks the former amount in damages from the defendants.
 Findings of Fact, Law and Conclusions Count I — Negligence
This count charges the defendants with negligence, i.e. professional malpractice in their work performance in appraising and assessing the fair market value of the Southington property. Specifically, the plaintiff charges that Brooke and AAS violated the standard of skill, care and diligence required of appraisers in making this appraisal. Our law is clear that in a case of professional negligence, if the standard of care in that profession is violated resulting in harm to the offended party, such violation is actionable negligence. See Pisel v. Stamford,180 Conn. 314 (1980). CT Page 9952
The plaintiff presented expert testimony from John Leary that a satisfactory certificate of completion (Exhibit 8) such as that used by Brooke should not have been used if the property was not completed. Further that such use violated Federal Home Loan Mortgage Corporation guidelines.
This court accepts such testimony and further finds that its use caused the plaintiff to make the loan, resulting in severe damage to the plaintiff because it certified to the plaintiff that construction had been completed when in fact, it had not. It is clear to the court that the certificate unmistakably conveys the impression to anyone reading it, as did the plaintiff's employees, that all work on the property was complete.
Brooke claims in his defense that in May 1995, Paul Brochu an employee of the plaintiff, was informed by Brooke that the construction was not completed. Other testimony revealed that Brochu left the company's employ in April, 1995. The court finds Brooke's testimony incredible, including his later claim that, in fact, it was another employee that he told of the incomplete work.
This court therefore finds that the defendants were negligent in the performance of the appraisal as requested by the plaintiff in that they failed to accurately advise the plaintiff as to the state of completion of the subject property and further failed to advise it that the property had been damaged by vandalism, all of which resulted in a vastly overstated appraisal.
Secondly, the defendants violated the standard of skill, care and diligence required of real estate appraisers by submitting the satisfactory completion certificate to the plaintiff when in fact construction of the property was not completed.
Thirdly, the negligence of the defendants was the proximate cause of the plaintiff's loss which was a direct result of the inflated appraisal of 1.1 million dollars.
 The (Third) Special Defense of Contributory Negligence
The defendants have alleged numerous claims of contributory negligence by the plaintiff. Among these was an improper reliance on the appraisal, especially that the plaintiff should have required more than one photograph of the property. (Brooke claims to have sent additional photographs, although the plaintiff received only one) CT Page 9953
Here, again, the court disbelieves Brooke's testimony and discounts his claim concerning the plaintiff's acceptance of one photograph. Plaintiff's expert testified that there is no such requirement for additional photographs which testimony the court accepts.
Specifically, this court finds no allegations of contributory negligence to have been proven by the defendants.
The court therefore finds in favor of the plaintiff on the first count of the complaint.
 Count II — Breach of Contract
The evidence submitted at trial is clear that there was a contract between the plaintiff and AAS for an appraisal to be performed by AAS on the Southington property.
The defendants claim in their defense that the plaintiff was not a party to the contract because it was neither the owner of the property (Mr. Assad) or the purchaser and ultimate borrower, (Mr. Sottile).
The simple answer to this claim is that neither of these individuals hired AAS or caused AAS to be hired. It was the plaintiff, which in the regular course of its business had engaged AAS to do the appraisal as it had done numerous times in the past.
Plaintiff's suit in contract is appropriate in a professional negligence case. Stowe v. Smith, 104 Conn. 194, 198-99 (1981).
For the same reasons articulated in this court's decision on the first count, the court finds that the defendant AAS breached its contract to perform appraisal services for the plaintiff. As a consequence thereof, the plaintiff suffered a monetary loss.
 Count Three — Fraud Recklessness
In this count, the plaintiff alleges that the defendants, in submitting the satisfactory completion certificate which was untrue, are guilty of fraud or recklessness.
As to the allegation of fraud, it is clear to the court that the defendant, Brooke, made false statements as to Shore's signature, the completion of construction and omitted to report the vandalism which had been perpetrated on the property.
It is not clear to the court, however, that the statements were made to CT Page 9954 induce the plaintiff to act on them.
The elements of fraud are (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did act upon that false representation to his injury. Suffield Associates Ltd. Partnership v. National Loan Investors,L.P., 64 Conn. App. 192, 202 (2001).
In a claim of fraud, the plaintiff must prove the first three requisites of fraud by clear and satisfactory or clear, precise and unequivocal evidence. Suffield Associates, supra, 202.
Although the court is satisfied that Brooke's actions were wrongful, the court can only speculate that they were made to induce the plaintiff to act upon them. Therefore, it cannot find by the standard imposed upon it that the defendants committed fraud in this case.
This third count contains an additional allegation, that of recklessness.
In practice, the term recklessly has been treated as meaning wilful or wantonly. Dubay v. Irish, 207 Conn. 518, 532-533 (1988). They all involve highly unreasonable conduct. Elliott v. City of Waterbury, 245 Conn. 385,418 (1998).
This conduct has been summarized in Dubay v. Irish, supra at 532 as follows:
". . . a state of consciousness with reference to the consequences of one's acts . . . It is more than negligence, more than gross negligence . . .
At page 532, the court further elucidates in defining wanton or reckless misconduct as "such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action."
The court finds that the actions of Brooke in certifying the satisfactory completion certificate, in failing to advise the plaintiff of the vandalism which existed on the property, and the unauthorized signing of Shore's name (as this court so finds) constituted negligence rising to the level of recklessness.
The court therefore finds for the defendants on the allegation of fraud but finds for the plaintiff on the allegation of recklessness on the CT Page 9955 third count.
 Count IV — CUTPA
Under this count, the plaintiff alleges that the defendants have violated the provisions of General Statutes §§ 42-110a, et. seq., the Connecticut Unfair Trade Practices Act (CUTPA).
Specifically, the plaintiff claims that the defendants violated the act by "engaging in . . . unfair or deceptive acts or practices in the conduct of . . . trade or commerce." Gen. Stat. § 110b(a).
Our Supreme Court has articulated a standard to determine whether or not a practice constitutes an unfair or deceptive act. This standard was reiterated as late as 1999 in Hartford Electric Supply Co. v.Allen-Bradley Co., 250 Conn. 334 (1999). In that case, the court opined:
 "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the "cigarette rule'[FN30] by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Willow Springs Condominium Assn., Inc. v. Seventh BRT Development Corp., 245 Conn. 43. Moreover, this court has set forth a three part test for satisfying the substantial injury criterion: "[1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must be an injury that consumers themselves could not reasonably have avoided."
CT Page 9956 Our Supreme Court has further defined the scope of an unfair method of competition or an unfair or deceptive act or practice as "such that there is a unique breadth and flexibility of the cause of action created." WebPress Services Corp. v. New London Motors, Inc., 203 Conn. 342, 361-364
(1987).
Web further holds that a violation may occur even if the defendants do not have an intention to. deceive or knowledge of the falsity of their statement or act. Id. at 363.
Professional malpractice cases are normally outside the scope of CUTPA. See Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34 (1997). However, Haynes does not exclude such cases in the event of the type of misconduct alleged in this case, i.e., deceptive acts such as forgery, deliberate falsification and nondisclosure. See Strol v. Strol, Superior Court Judicial District of Litchfield (CV 94-0066081), Pickett, J. (9-5-96) (forgery). Intent to deceive is not an essential element to prevail under CUTPA, Normand Josef Enterprises, Inc. v. Connecticut National Bank,230 Conn. 486 (1994).
It is clear to the court that the defendants committed the violations of CUTPA alleged by the plaintiff for the following reasons:
1. Brooke submitted the Certificate of Satisfactory Completion to the plaintiff on May 23, 1995 when he knew that the construction work had, in fact, not been completed and further knew that no work had been done on the property since the first appraisal dated February 3, 1995;
2. He failed to disclose to the plaintiff his knowledge of the vandalism damage that had taken place since the first appraisal;
3. He signed the name of Mr. Shore who did the actual appraisal, without Shore's permission or knowledge.
As a result of these false and deceptive representations, the plaintiff incurred substantial damages as will be discussed below.
The court finds for the plaintiff on Count IV.
 First Special Defense — Statute of Limitations[2]
The court has previously ruled on the defendants' claim that the plaintiff's cause of action occurred on February 3, 1995 when the defendants' submitted the first appraisal of the property. They claim that Gen. Stat. § 52-584 which carries a two year statute of limitations is the operative statute. The court denied their motion to CT Page 9957 strike (Stengel, J.) but did not articulate its reasons.
The defendants are incorrect for two reasons:
1. The plaintiff claims and the court agrees, that the defendants' wrongful acts, commenced on May 23, 1995, the date of the Satisfactory Completion Certificate.
2. The applicable statute of limitations is Gen. Stat. § 52-577
which has a limitation period of three years.
The defendants' claim rests upon a determination that the plaintiff's action is to recover for injury to real or personal property. Economic loss as suffered by the plaintiff is subject to § 52-577 as are legal malpractice cases. See Williams Ford, Inc. v. Hartford Courant Co.,232 Conn. 559 (1995), and S.M.S. Textile Mills, Inc. v. Brown, Jacobson,Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 790, cert. denied,220 Conn. 903 (1993).
The court therefore finds that this special defense is inapplicable because the operative statute of limitations is § 52-577.
 DAMAGES Count I — Negligence
The award of compensatory damages in this case is controlled by our Supreme Court's decision in First Federal Savings and Loan Association ofRochester v. Charter Appraisal Co., Inc., 247 Conn. 597 (1999). See alsoTuthill Finance v. Greenlaw, 61 Conn. App. 1, 6-7 (2000).
In Charter, the court formulated a rule that in cases of a loss caused by real estate appraiser malpractice, damages are to be determined at the time that title vests in the foreclosing party.[3]
The plaintiff, herein, is pursuing its claim against the defendants under the rights held by its assignor, Countrywide, and thus stands in the shoes of Countrywide. Federal National Mortgage Assn. v. Jessup, CV 98-0169414, Superior Court, Judicial District of Stamford/Norwalk at Stamford, (Hickey, J.)
The Supreme Court opined in Charter that when title vested in the plaintiff, the damages against a negligent third party were set because, at that time, a statutory deficiency judgment could have been calculated and set. General Statutes § 49-14 (a). CT Page 9958
The court reasoned that "the bank had unfettered and unsupervised discretion to choose both the time for the sale of its property and the terms and conditions of the contract of sale. The consequences of the bank's exercise of this discretion cannot be visited on the appraiser under the circumstances of this case." Charter, 611.
This court is bound by the decision in Charter and must apply that rule to this case.
The debt set by the foreclosure court was $722,646.30. The value of the property submitted to the court by the plaintiff's appraiser and accepted by the court was $552,000.[4]
Therefore, under Charter, the plaintiff's damages are limited to the debt $722,646.30, minus the value at title vesting, $552,000, or $170,646.30.
It is appropriate, at this time, that the court discuss the defendants' two remaining special defenses:
1. Failure to mitigate damages.
Our law has long held that a plaintiff seeking damages has a duty to minimize those damages, but without sacrificing any rights of its own. Its duty is to use a reasonable effort to minimize damages. DanparAssociates v. Somersville Mills Sales Room, Inc., 182 Conn. 444, 446
(1980). Failure to mitigate is the burden of the defendants. Charter,
supra, 615.
This court finds that the plaintiff and Countrywide acted swiftly and responsibly against the defaulting mortgagor.
As for the defendants' attempt to place responsibility for the vandalism on the plaintiff, there is no evidence that the plaintiff did not oversee the property as best it could. It should be noted, moreoever, that there is no evidence as to what, if any reduction in fair market value was assigned at judgment because of vandalism.
The court finds for the plaintiff on the special defense of mitigation of damages because the defendants have failed to carry their evidential burden.
2. Collateral Estoppel
This special defense becomes inapposite because this court has already decided that the plaintiff as an assignee is bound by the foreclosure CT Page 9959 court's judgment.
Therefore; under Count I — Negligence, the plaintiff is entitled to compensatory damages in the amount of $170,646.30.
 COUNT II — BREACH OF CONTRACT
The court has already found for the plaintiff under this count. Accordingly, compensatory damages are identical to those awarded in Count I, namely $170,646.30.
 Preludament Interest
In breach of contract actions, the court may award prejudgment interest in claims for liquidated damages.
General Statutes § 37-3a[5] provides a substantive right that applies only to certain claims. It does not allow prejudgment interest on claims that are not yet payable. Westport Taxi Service, Inc. v. WestportTransit District, 235 Conn. 37 (1993).
Under General Statutes § 37-3a, an allowance of prejudgment interest turns on whether the detention of the money is or is not wrongful under the circumstances. Cecio Bros., Inc. v. Feldmann,161 Conn. 265, 275 (1971).
Prejudgment interest pursuant to § 37-3a has been applied to breach of contract claims or to claims for consequential damages. Neiditz v.Morton S. Fine Associates, Inc., 2 Conn. App. 322 (1984). The purpose of the statute is recognized as intending to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him.Neiditz, supra, 331.
The court is satisfied that the plaintiff is lawfully entitled to prejudgment interest pursuant to § 37-3a.
The damages in this case became liquidated on November 26, 1996, the day that title vested in the plaintiff. The defendants undoubtedly knew of their wrongdoing at that time. They made no effort to pay the damages and have steadfastly continued such refusal throughout these proceedings. The court finds those damages of $170,646.30 wrongfully withheld. Interest is therefore due the plaintiff from November 26, 1996 until the date of this judgment at the rate of ten percent a year. This interest is calculated as follows:
 10% of $170,646.30 per year CT Page 9960 = $17,064.63 x 4 years = $68,258.52 + $46.7524 per day from 11/26/00 to 7/23/01 240 days = 11,220.57 = $79,479.10
 COUNT III — FRAUD AND RECKLESSNESS
Inasmuch as the court has found for the defendants on the allegation of fraud but has found for the plaintiff on the allegation of recklessness, compensatory damages are awarded as in counts I and II in the amount of $170,646.30.
Because the court has found the actions of the defendants to be reckless, the court will consider an additional award of punitive damages.
Punitive damages, applying the rule in this state as to torts, are awarded when the evidence shows a reckless indifference to the rights of others or an intentional or wanton violation of those rights. Collens v.New Canaan Water Co., 155 Conn. 477 (1967).
The defendants' conduct in this case as previously discussed satisfies the tort test for punitive damages.
Common law punitive damages in Connecticut are attorney's fees and litigation costs. Markey v. Santangelo, 195 Conn. 76, 80 (1985).
In accordance with an agreement of the parties, the court will consider the amount of such award at a post judgment evidentiary hearing.
 COUNT IV — CUTPA Compensatory Damages
For the reasons previously discussed in this memorandum, the compensatory damages awarded under CUTPA are $170,646.30.
 Punitive Damages
This court, having found a CUTPA violation is now charged with considering whether or not to award punitive damages. General Statutes § 42-110g(a).
Our Supreme Court has articulated a standard for the court's guidance in making this determination. That standard is that the court may award punitive damages under CUTPA if it finds that the defendants' conduct was recklessly indifferent to the rights of others. Garzano v. Heyman,
CT Page 9961203 Conn. 616, 622 (1987).
In Count III of this memorandum, the court discussed the requirements of-reckless conduct. It found, in fact, that the defendants conduct rose to that level. It so finds in this count.
As previously stated, this court has determined that it cannot find that Brooke intentionally submitted a false Certificate of Satisfactory Completion, but clearly finds that such submission was done recklessly and without regard to the consequences of this action. The court has previously articulated those acts which it found to violate CUTPA. It now finds that an award of punitive damages is appropriate in this case.
CUTPA provides no guidelines as to a method for determining the amount of a punitive damages award." Staehle v. Michael's Garage, Inc.,35 Conn. App. 455, 463 (1994). Nevertheless, several methods have gained acceptance by the courts in Connecticut Id. by common practice, "courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages." Perkins v. Colonial Cemeteries, Inc.,53 Conn. App. 646, 649 (1999). An often accepted and used method in our courts has been to double the amount of actual or compensatory damages. See Bailey Employment System v. Hahn, 545 F. Sup. 62, 73 (D.Conn. 1982), aff'd. 723 F.2d 895 (2d. Cir. 1983).
It is the conclusion of this court that this method is fair and appropriate in this case and accordingly awards the sum of $341,292.60 as punitive damages.
 Attorneys' Fees
General Statutes § 42-111g(d) provides further that in a court may award attorney's fees to a plaintiff who establishes a CUTPA violation.
The attorney's fees so awarded shall be "based on the work reasonably performed by an attorney and not on the amount of recovery." See alsoLarsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 509 (1995). The criteria to be followed by the court is set forth in Jacaues All TradesCorp. v. Brown, 57 Conn. App. 189 (2000).
The statutory violation having been established, attorney's fees may be so awarded at a post judgment evidentiary hearing.
Judgment may enter for the plaintiff under this count in the amount of $170,646.30, compensatory damages plus $341,292.60 punitive damages. To this sum may be added attorney's fees to be determined at the subsequent hearing. CT Page 9962
In summary, therefore, the plaintiff is entitled to damages as follows:
 Compensatory damages pursuant to Counts I, II, III and IV $170,646.30
 Statutory interest pursuant to Count II 79,479.10
 Punitive damages pursuant to Count IV 341,292.60
$591,418.00
 Attorneys' fees and punitive damages pursuant to Counts III and IV to be determined
Judgment may enter accordingly.
Freed, J.