## CONNECTICUT LIMOUSINE SERVICE, INC.
## v. NANCY POWERS ET AL.
## (4288)

BORDEN, DALY and BIELUCH, Js.

Argued March 19—decision released May 20, 1986

*John T. Grillo,* with whom, on the brief, was *Albert R. Annunziata,* for the appellant (named defendant).

*Michael Brodinsky,* for the appellee (plaintiff).

DALY, J. This appeal arises from an action by the plaintiff to recover from the named defendant[1] sums due for tickets purchased for the use of the plaintiff's limousine service. The named defendant pleaded, by way of special defense, that the agreement to sell limou-

---

[1] Arthur Barbieri was a defendant in this case, but judgment was rendered in his behalf and he is no longer involved in this appeal.

sine tickets was between the plaintiff and Nancy Powers Associates, Inc., and, therefore, that the defendant Powers was not individually liable. The trial referee determined that an implied contract existed between the plaintiff and Powers individually and, as a result, awarded the plaintiff damages.

On appeal, the named defendant has raised the following claims: (1) whether the referee erred in admitting into evidence a credit application purportedly sent to the named defendant and returned by mail to the plaintiff, on the ground that it did not fall within either the business record or the "reply doctrine" hearsay exception; and (2) whether a contract existed only between the plaintiff and Nancy Powers Associates, Inc., thereby excluding Nancy Powers from personal liability on the debt.

The following facts were found by the trial referee. In June, 1980, Nancy Powers Associates, Inc., purchased Yale Co-op Travel Agency and the Leona Travel Agency. For more than a year thereafter, these agencies ordered, received and paid the plaintiff for tickets that the named defendant in turn sold to customers for their transportation to and from airports. The plaintiff has many such agreements with travel agencies throughout the state for the purpose of providing customers with airport connecting travel.

Powers ran both agencies exclusively from July, 1971, and was entirely in control of Yale Travel from June, 1980. She made travel arrangements, deposits, signed checks and generally managed Yale Travel. The plaintiff did not learn of the change of ownership in Yale Travel until July, 1981, at which point, a new credit application was mailed for up-dating to Yale Travel and was received back in the mail, listing the owners as Arthur Barbieri and Nancy Powers, his daughter. The application listed "Leona Travel Agency

& Yale Co-op Travel Agency" as the business names and further indicated that the business was a partnership. Although the named defendant was billed for tickets sold from August to December, 1981, totalling approximately $7000, no payments were remitted for these tickets despite the fact that previous payments had been made from June, 1980, to July, 1981.

At no time did Powers or Barbieri disclose to the plaintiff or to the plaintiff's employees that a corporation existed known as Nancy Powers Associates, Inc. The referee further found that no public knowledge of the existence of the corporation such as advertising, phone listing, stationery or billheads was adduced at trial to show that actual or constructive notice of the corporation was given to potential creditors such as the plaintiff. In August, 1981, Leona Travel ceased to exist as a viable entity. Finally, it was found that the entire course of dealings between the plaintiff and Nancy Powers Associates, Inc. was carried on through Powers herself, apparently doing business as "Yale Co-op Travel Agency."

The named defendant claims that the unsigned credit application was a hearsay document that did not fall within the business records exception or under the reply doctrine. "In testing the inferences that the trier is justified in drawing from the proven facts, a party is entitled to have his evidence considered in the most favorable view which it could reasonably bear." *Monroe v. Crandall*, 3 Conn. App. 214, 219, 486 A.2d 657 (1985). In order for a document to fall within the business records exception to the hearsay rule, the record must be shown to have been made "in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter." General Statutes § 52-180 (a). In this case, insufficient evidence

was presented to establish that the credit application conformed to the requirements of § 52-180 (a) and, therefore, it should not have been admitted into evidence under the business records exception.

To determine the admissibility of a reply letter, the contents must be shown to contain information that only the purported author is likely to know and expressed in a way peculiar to that author. *Whalen* v. *Gleeson,* 81 Conn. 638, 642–43, 71 A. 908 (1909); McCormick, Evidence (2d Ed.) § 225, pp. 552–53. Here, the credit application was not specifically addressed to Powers or Barbieri, nor was it returned to the plaintiff with either of their signatures. *Garland* v. *Gaines,* 73 Conn. 662, 665, 49 A. 19 (1901). The trial court's admission of the credit application under the reply doctrine was, therefore, erroneous.

"Although the ruling was erroneous, the defendant is not entitled to relief unless the error is also harmful." *McCahill* v. *Town & Country Associates, Ltd.,* 185 Conn. 37, 40, 440 A.2d 801 (1981). We find the error with regard to the admission of the credit application harmless as other evidence presented sufficiently supported the court's judgment.

While the defendant Powers does not deny the existence of an agreement with the plaintiff, she claims that the contract was with Nancy Powers Associates, Inc., and that she was merely an agent of the corporation. The referee found that Powers did not reveal to the plaintiff that she was dealing with it as an officer of the corporation, Nancy Powers Associates, Inc. It was further found that Powers continued to hold herself out to the public and to the plaintiff as the main principal at Yale Travel. "The law is settled that where an agent contracts in his own name, without disclosing his representative capacity, the agent is personally liable on

the contract." *Murphy* v. *Dell Corporation,* 184 Conn. 581, 582, 440 A.2d 223 (1981); *Diamond Match Co.* v. *Crute,* 145 Conn. 277, 279, 141 A.2d 247 (1958). "To avoid personal liability, it is the duty of an agent to disclose both the fact that he is acting in a representative capacity and the identity of his principal, since the party with whom he deals is not required to discover or make inquiries to discover these facts." (Citations omitted.) *New England Whalers Hockey Club* v. *Nair,* 1 Conn. App. 680, 683, 474 A.2d 810 (1984). Neither Powers nor Barbieri informed the plaintiff that a corporation existed nor did they hold themselves out publicly as a corporation.

The defendant further raises the argument that payments to the plaintiff covering a period of more than a year were made by checks from the corporation. Payments by corporate checks were not considered sufficient notice to the plaintiff that travel tickets were purchased on behalf of the corporation and are insufficient to exempt the defendant from personal liability. *Diamond Match Co.* v. *Crute,* supra, 278–79; *Antinozzi Associates* v. *Arch Fracker Plumbing & Heating Contractor, Inc.,* 39 Conn. Sup. 375, 379, 465 A.2d 333 (1983). In this case, not only were corporate checks used but also the defendant "made no attempt to have the plaintiff charge or bill the corporation instead of [herself] . . . [and] made no protest until after financial difficulties arose . . . ." *Diamond Match Co.* v. *Crute,* supra.

Whether there was nondisclosure to the plaintiff that Nancy Powers Associates, Inc., was the principal, so that the plaintiff might hold Powers personally liable on the contract, is a question of fact for the trial court. *Murphy* v. *Dell Corporation,* supra, 582; see also *Botticello* v. *Stefanovicz,* 177 Conn. 22, 26, 411 A.2d 16 (1979). The referee decided this question of fact in favor of the plaintiff. While the function of the trial court con-

sists of weighing evidence and judging the credibility of the witnesses, that is not the function of this court. *Murphy* v. *Dell Corporation,* supra, 583. "A reviewing court's role is to decide whether the decision of the trial court is clearly erroneous in view of the evidence and pleadings in their entirety. The trial court's decision was not clearly erroneous." *Wykowski* v. *Presti,* 7 Conn. App. 188, 190, 508 A.2d 444 (1986); *New England Whalers Hockey Club* v. *Nair,* supra, 683–84.

There is no error.

In this opinion the other judges concurred.