ROBERT T. REYNOLDS ASSOCIATES, INC. *v.*
JOHN JAMES ASBECK
(8529)

DALY, CRETELLA and LANDAU, Js.

Argued June 13—decision released September 18, 1990

*Eliot Gersten,* with whom, on the brief, was *Peter H. Lovell,* for the appellant (defendant).

*Susan L. Miller,* with whom, on the brief, was *Robert E. Byron,* for the appellee (plaintiff).

DALY, J. The plaintiff instituted this contract action against the defendant for the recovery of sums due for advertising services.[1] The defendant pleaded, by way of special defense, that the plaintiff was either estopped from holding him personally liable on the agreement or had waived the right to do so. The trial court rendered judgment for the plaintiff and awarded $31,453.93 in damages, together with statutory interest. On appeal, the defendant claims that the trial court (1) should not have found him personally liable, and (2) should not have granted the plaintiff's motion in limine that precluded evidence of the defendant's agency relationship with J.S. Sales Corporation International (J.S. Sales Corporation). We affirm the trial court's judgment.

I

The trial court found the following facts that are relevant to the first claim. In January, 1984, the plaintiff started doing business with Acousticon Electronics

[1] In a second count, the plaintiff also asserted that it was entitled to attorney's fees pursuant to the provisions of the Connecticut Unfair Trade Practices Act; General Statutes § 42-110a et seq.; because the defendant violated General Statutes § 35-1 when it did not register its trade name in the town where it conducted business. The court held that this was a violation but did not award attorney's fees because it determined that the failure to file was attributed to the principal, not the agent. The plaintiff has not cross appealed.

(AE), a company that employed between forty-five and fifty people and that was involved in the manufacturing of hearing aids. Although AE was a trade name, there was no certificate of that name filed in Waterbury, its principal place of business. From January through June, 1984, the plaintiff provided advertising services for AE. During this time period, Robert T. Reynolds, the plaintiff's president, worked directly with Niles Floyd, vice president of AE, and communicated with Robert Teal, AE's president, on billing matters. Some time in January, 1984, Reynolds was told by either Teal or Floyd that AE was not a corporation. This was stated in connection with a logo that was being made for AE. When the plaintiff first started doing business with AE, the plaintiff did not request, or perform, a credit check, or require personal guarantees. Payment for those services was made.

In July, 1984, the defendant first heard about AE when he met with Teal regarding possible employment. Following this meeting, the defendant went to Birmingham, Alabama, where he met with Charles Speir, whom the defendant understood to be in the process of buying J.S. Sales Corporation. The defendant entered into a verbal three year employment contract with Speir and was paid by J.S. Sales Corporation.

The defendant began his employment as president of AE in August, 1984. He was put in charge of trying to resolve AE's financial difficulties. Shortly after analyzing the needs of AE, the defendant contacted Reynolds to obtain advertising services, advising Reynolds that he was the president of AE. The defendant authorized, reviewed and approved the advertising services at issue. The plaintiff provided these services and billed the defendant. During the period that the plaintiff provided services at the defendant's request, the defendant did not inform the plaintiff that

he was the agent for any other entity. The defendant made partial payment but when pressed for the rest of the money, he merely made reference to "money" people, but never disclosed their identity or involvement.

The trial court found that there was a meeting of the minds to form a contract, and that the defendant's special defenses were without merit. In addition, the court found that, even if the defendant had shown that an agency relationship existed with J.S. Sales Corporation, a corporation that sold its assets at public auction under the name J.S. Sales Corporation International d/b/a Acousticon Electronics, the defendant's failure to disclose a principal to the plaintiff caused him to remain personally liable.

In this first claim, the defendant asserts three theories as to why he should not be personally liable.

He first argues that the court should not have found that there was mutual assent to form a contract since he never intended to contract on his behalf. We disagree.

"It is true . . . that in order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; see Restatement (Second), Contracts §§ 1 (c), 15, 19 (Tent. Dr. 1964); 1 Williston, Contracts (1957) §§ 18, 22; see also *Hoffman* v. *Fidelity & Casualty Co.,* 125 Conn. 440, 444, 6 A.2d 357 (1939); *Clark* v. *Diefendorf,* 109 Conn. 507, 510, 147 A. 33 (1929); and the identities of the contracting parties must be reasonably certain." *Ubysz* v. *DiPietro,* 185 Conn. 47, 51, 440 A.2d 830 (1981).

The defendant essentially argues that the plaintiff, as part of its duty to be reasonably certain of the identity of the party with whom it was contracting, should have been more diligent in ascertaining whether the

defendant intended to bind himself or a corporation. The defendant argues that because of evidence that shows that the plaintiff was not diligent in doing this, the plaintiff failed to prove this essential element of a contract and thus no contract existed to bind him. This argument fails for two reasons.

First, to impose such a duty on the plaintiff under the guise of mutual assent would impermissibly shift the burden of proving notice of agency away from the party asserting its existence. The law is clear that the burden of proving agency is on the party asserting its existence. See *Botticello* v. *Stefanovicz,* 177 Conn. 22, 26, 411 A.2d 16 (1979); *New England Whalers Hockey Club* v. *Nair,* 1 Conn. App. 680, 683, 474 A.2d 810 (1984).

Further, the defendant's claim that the plaintiff had a duty to discover in what capacity the defendant was acting in order to meet its burden of proving mutual assent is contrary to this court's statements in *New England Whalers Hockey Club*: "To avoid personal liability, it is the duty of an agent to disclose both the fact that he is acting in a representative capacity and the identity of his principal, since the party with whom he deals *is not required to discover or to make inquiries to discover these facts.* . . . Therefore, 'where the agent contracts as ostensible principal, regardless of his intention and notwithstanding his lack of personal interest in the consideration, he will be personally liable on the contract as if he were the principal.' 3 C.J.S., Agency § 369." *New England Whalers Hockey Club* v. *Nair,* supra. Accordingly, the defendant's first theory of avoiding personal liability is without merit.

The defendant next argues that, because the plaintiff had notice that the defendant was acting in the capacity of an agent, he should not be personally liable. Here, the defendant argues that his consistent use

of the words "its president" when dealing with the plaintiff and the fact that the name "Acousticon Electronics" appeared on all invoices and correspondence constituted notice that he was not making a personal promise and, therefore, should not be personally liable. The defendant relies on *Jacobs* v. *Williams,* 85 Conn. 215, 82 A. 202 (1912), for his assertion that the plaintiff had proper notice that he made a corporate obligation and not a personal obligation. That case is distinguishable from the present case. In *Jacobs,* the name of the alleged principal, the Glastonbury Power Company, appeared directly above the signatures of the two officers who also signed in their representative capacity. Further, the court in that case relied on the following rule: "[W]here the corporation appears as the primary signer, the almost universally accepted and reasonable rule of construction is that where the signature is that of the corporation, and the name or names of one or more of its officers in their official capacity are appended as subscribing agents . . . the corporation will be regarded as the signer and obligor, and the individuals will not be obligated, unless other language or the general tenor of the writing indicates a contrary intent." Id., 219.

In this case, the court found that AE was not a corporation. This finding is supported by the evidence. Thus, although the name of the business, "AE," may have been present in the correspondence between the parties, there was no evidence submitted to show that this business was a corporation. The only evidence indicating the possibility that this was a corporate obligation was that the correspondence was signed by the defendant as president. The proper name of the alleged corporation, however, was J.S. Sales Corporation International d/b/a Acousticon Electronics. The name of that corporation never appeared in any correspondence concerning this contract. Because this was not a corporate

obligation, the mere fact that the defendant signed in a representative capacity will not permit him to avoid personal liability.

Last, the defendant argues that the plaintiff had notice of both the fact of his agency and the identity of his principal either (1) because the plaintiff "has not overcome its burden of establishing that insufficient information as to the existence of an agency relationship was provided to [the] plaintiff justifying a reasonable belief that it was dealing with the defendant alone," or, alternatively, (2) because the plaintiff knew that it was dealing with a certain principal and had previous dealings of the same nature through the agent's predecessor.

The first part of the argument has no merit. As previously indicated, it was the duty of the agent and not of the third party with whom he was dealing to disclose both the fact that he was acting in a representative capacity and the identity of the principal because the party with whom he deals is not required to discover these facts. *New England Whalers Hockey Club* v. *Nair*, supra; see also *Connecticut Limousine Service, Inc.* v. *Powers*, 7 Conn. App. 398, 402, 508 A.2d 836 (1986).

The second part of the defendant's argument is, essentially, a challenge to the trial court's factual finding that the defendant failed to disclose the identity of his principal.

While it is true that "[a]n agent, by making a contract only on behalf of a competent disclosed principal whom he has the power to bind, does not thereby become liable for its nonperformance; *Behlman* v. *Universal Travel Agency, Inc.*, 4 Conn. App. 688, 690, 496 A.2d 962 (1985); whether there was a nondisclosure of a competent principal so that the plaintiff might hold the defendant personally liable on the contract is a ques-

tion of fact for the trial court. *Connecticut Limousine Service, Inc.* v. *Powers,* supra.

The evidence showed that neither the defendant nor his alleged predecessors, Teal or Floyd, informed the plaintiff that a corporation existed. See id. " 'A reviewing court's role is to decide whether the decision of the trial court is clearly erroneous in view of the evidence and pleadings in their entirety.' " Id., 403. The trial court's decision was not clearly erroneous.

## II

In his second claim, the defendant argues that the trial court abused its discretion when it granted the plaintiff's motion in limine that precluded evidence of the defendant's agency relationship with J.S. Sales Corporation.

On January 18, 1988, the plaintiff filed its discovery request with the defendant. The defendant responded on April 6, 1988. In response to interrogatory No. 1, which asked whether AE was or is a corporation, the defendant stated, "Defendant does not know; the company existed, was organized and presumably incorporated before my employment as president of the company. The incorporation was done by others who preceded me in the company." In response to interrogatory No. 2 (a), asking under what name the corporation was incorporated, the defendant responded, "See Answer to Interrogatory No. 1 above."

On April 14, 1989, a short time before trial was to have begun, the defendant filed supplemental answers to the plaintiff's discovery request. The supplemental answer to interrogatory No. 1 was "Accousticon Electronics [sic] is a trade name for a corporation." Under interrogatory No. 2 (a), the name of the corporation that was given was J.S. Sales Corporation Interna-

tional. The defendant also indicated for the first time that the assets of J.S. Sales Corporation were sold at public auction in 1985.

The plaintiff prepared a motion in limine dated April 18, 1989. The trial did not, however, begin until August 1, 1989. As part of his case the defendant was called to testify. During his cross-examination, the plaintiff filed the motion in limine that was based on Practice Book § 231. The court granted its motion.

The next day, the defendant filed a motion for reconsideration of the motion in limine with the trial court. The trial court permitted the defendant to make further argument. The court, however, did not change its ruling. The court provided several reasons for ruling as it did. It indicated that the defendant's testimony was that he knew the corporate structure of AE, i.e., that it was not a corporation at the time he entered into his employment agreement, yet his initial response to the discovery request was that he did not know whether AE was a corporation. Further, the court noted that the one year delay in changing his answer resulted in the plaintiff not receiving the new information in a timely fashion.

Practice Book § 231 provides in relevant part: "[I]f any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead . . . the court may, on motion, make such order as the ends of justice require. Such orders may include the following: . . . (d) The entry of an order prohibiting the party who has failed to comply from introducing such matters in evidence . . . ." The court's decision on the ordering of such sanctions as the one in issue rests within its sound discretion. See *Zaleski* v. *Zaleski,* 21 Conn. App. 185, 189, 572 A.2d 76 (1990). " 'In reviewing a claim that this discretion has been abused " ' "the unques-

tioned rule is that 'great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness.' . . . " ' " ' (Citations omitted.) *Rullo* v. *General Motors Corporation,* [208 Conn. 74, 78, 543 A.2d 279 (1988)]. ' "[T]he ultimate issue is whether the court could reasonably conclude as it did. . . ." ' " (Citations omitted.) *Zaleski* v. *Zaleski,* supra. In view of the multi-faceted answers given by the defendant and the sound reasons given by the trial court, we conclude that the trial court could reasonably have imposed the sanction in question.

The judgment is affirmed.

In this opinion the other judges concurred.