[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DOCKET ENTRIES NOS. 119, 121, 122, 124, 125 AND 126 OBJECTIONS AND EXCEPTIONS TO ATR REPORT
The plaintiffs, Michael Selvaggi and Monument Setting Company, Inc. (Monument), filed a four-count complaint against the defendants, Richard Miron and Ann Miron (the defendants) on March 7, 1996. The plaintiffs allege the following facts in count one. Selvaggi is the president of Monument, and the defendants are the owners of Lakeview Monument Company (Lakeview). From September 1988 to about July 1995, the plaintiffs performed services for the defendants in the amount of $126,618.68. Finance charges have accrued on the unpaid balance at a rate of 1.5% per month, totaling $73,897.99. The defendants, as of February 1, 1996, owed the plaintiffs $95,937.15. The plaintiffs allege a cause of action of unjust enrichment in count two. The plaintiffs allege in count three that from about December 30, 1991 until about June 9, 1994, the defendants executed and delivered to the plaintiffs $79,000 worth of checks that were not honored by the defendants' bank. The plaintiffs seek the amount of the checks plus legal interest thereon. The plaintiffs allege in count four that the actions of the defendants alleged in count three violate the Connecticut Unfair Trade Practices Act (CUTPA).
Richard Miron filed an "Answer, Special Defenses and Counterclaim" dated April 19, 1996. Richard Miron argues in his special defense that the parties' dispute has been settled by way of novation. The counterclaim alleges that Monument agreed to permit Richard Miron to pay a minimum of $500 on account per month until the balance had been paid, that Monument accepted these payments, and that Monument breached its agreement by CT Page 12395 unilaterally changing the terms of the agreement and refusing payment. Ann Miron filed a separate answer on May 23, 1996, wherein she alleges in a special defense that the plaintiffs' causes of action are barred by the statutes of limitations in General Statutes § 52-576 and General Statutes § 52-581.[1]
The matter was tried before attorney trial referee Raymond B. Ruebens who issued a report on November 12, 1996, containing eighteen findings of fact and three recommended rulings. The attorney trial referee (ATR) concluded that judgment should enter in favor of the plaintiffs on counts one and two in the amount of $22,039.16 plus interest and costs. The ATR further found in favor of the defendants on counts three and four, and in favor of the plaintiffs on the counterclaim. On November 25, 1996, the defendants filed motions to correct the ATR report, to correct conclusions of fact and recommended rulings.[2] The plaintiffs also filed a motion to correct on December 6, 1996, seeking the correction and inclusion of additional facts. The ATR summarily denied all of the parties' motions to correct on December 3, 1996. The plaintiffs have now filed exceptions and objections to the acceptance of the ATR report pursuant to Practice Book §§ 439, now Practice Book (1998 Rev.) § 19-13, and 440, now Practice Book (1998 Rev.) § 19-14. The defendants have also filed both exceptions and objections to the ATR report. The matter was heard by the court on September 21, 1998.
An attorney referee is obliged to report to the court the facts found and the conclusions drawn therefrom, but the report may be supplemented with a memorandum of decision including such matters as the attorney referee may deem helpful in the decision of the case. Tarka v. Filipovic, 45 Conn. App. 46, 50,694 A.2d 824, cert. denied, 242 Conn. 903, 697 A.2d 363 (1997). "The parties may seek additions or corrections in the facts contained in this report by filing a motion to correct with the attorney referee pursuant to Practice Book § 438 [now Practice Book (1998 Rev.) § 19-12]." Id. "After the attorney referee responds to any motions to correct, the parties may file with the trial court exceptions to findings of fact pursuant to Practice Book § 439 [now Practice Book (1998 Rev.) § 19-13] or objections to factual conclusions or rulings pursuant to Practice Book § 440 [now Practice Book (1998 Rev.) § 19-14.]" Id., 50-51.
 A. Exceptions To The ATR Report
CT Page 12396
Practice Book § 439 [now Practice Book (1998 Rev.) § 19-13] prohibits the correction of facts found by the referee unless a material fact has been found without evidence or the referee has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear. Stamford v. Kovac, 229 Conn. 627, 633, 642 A.2d 1190
(1994). A reviewing authority may not substitute its findings for those of the trier of the facts. Elgar v. Elgar, 238 Conn. 839,848, 679 A.2d 937 (1996). The factual findings of a trial referee on any issue are reversible only if they are clearly erroneous. Id. A reviewing court cannot retry the facts or pass upon the credibility of the witnesses. Id. A finding of fact is clearly erroneous when there is no evidence in the record to support it or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. Id.
 1. Plaintiffs' Exceptions
The plaintiffs first argue that the facts stated in paragraph five of the ATR report should be struck because they were found without evidence. Paragraph five provides: "Following a divorce in 1992 the defendant, Ann M. Miron left the business."
According to Richard Miron, he and Ann Miron were divorced in 1992. (Transcript, p. 54). Richard Miron testified that Ann Miron did not have a role in the business before, does not have a role in the business today, and has had no role in the business since the divorce. (Transcript, pp. 69-70). Richard Miron also testified that Ann Miron was no longer at the business subsequent to December of 1990, when he was served with divorce papers. (Transcript, pp. 73, 82). Ann Miron testified to this as well. (Transcript, p. 98). Richard Miron further testified that Ann Miron was no longer listed in the defendants' telephone directory advertisement after the divorce. (Transcript, p. 80). In addition, the court received as exhibits income tax returns from Ann Miron which show no business income or loss after the 1992 filing year. (Ann Miron Ex. 4).
Based on the testimony of the defendants, there was evidence from which the ATR could find that following the defendants' divorce, Ann Miron left the business. Therefore, the plaintiff's exception is denied. CT Page 12397
The plaintiffs also except to the inclusion of "1992" in paragraph ten of the ATR report. That paragraph states: "At no time during the period 1976 to 1992 did the defendant make any attempt to deny Ann M. Miron's Proprietary interests in Lakeview Monument Company."
The plaintiff Selvaggi testified that he began doing business with the defendants in 1976. (Transcript, p. 8) Selvaggi also testified that from the beginning of their business relationship, the plaintiffs received work orders from both of the defendants. (Transcript, p. 9). When visiting the defendants' place of business, Selvaggi observed two separate desks with name plates on them in the name of each defendant. (Transcript, p. 10). Ann Miron did not deny the fact that Lakeview's offices contained a separate desk on which was a nameplate bearing her name. (Transcript, p. 101). In addition, Selvaggi discovered that on a duly recorded trade name certificate, both defendants were listed as owners of Lakeview. (Transcript, pp. 13-14).[3] Finally, the plaintiffs introduced telephone directory advertisements up to 1992 in which both the defendants were listed as proprietors of Lakeview. (Transcript, p. 17). Richard Miron testified that Ann Miron's name was removed from the phone directory advertisements subsequent to the divorce in 1992. (Transcript, p. 80)
The removal of Ann Miron's name from the telephone directory advertisements in 1992 was the first time the defendants indicated to the public that Ann Miron was not a proprietor of Lakeview. Based upon the evidence presented, the ATR could reasonably conclude that to the best of the general public's knowledge the defendants were both owners and/or proprietors of Lakeview from 1976 through 1992. Therefore, the plaintiffs' exception to paragraph ten is also denied.
The plaintiffs also except the findings of fact in paragraphs thirteen and seventeen, and seek to have substituted the findings requested in paragraphs four through twelve of their motion to correct. Paragraph thirteen of the ATR report states: "The defendants never agreed to this [service] charge and has [sic] not paid this charge." Paragraph seventeen of the ATR report states: "There was no agreement by the parties to include finance charges." The plaintiffs seek to insert facts showing that the parties had an implied agreement that the defendants would pay a one and a half percent finance charge on amounts owed by the defendants after thirty days. The plaintiffs also argue that these findings of fact by the ATR were contrary to and CT Page 12398 unsupported by the evidence presented at trial.
Selvaggi testified that he instituted the finance charge in 1979 by listing it on the defendants' monthly statement. (Transcript, pp. 18, 26). Selvaggi also testified that the finance charge provision was listed on price sheets sent to the defendants. (Transcript, p. 23). Selvaggi further testified that the defendants did not object to the imposition of the finance charge. (Transcript, p. 48). Richard Miron testified, however, that he never agreed to pay the finance charge proposed by the plaintiffs. (Transcript, p. 65). According to Richard Miron, he and Selvaggi discussed the imposition of a finance charge on a multitude of occasions over a long period of time, but the defendants never signed any document promising to pay finance charges. (Transcript, pp. 65, 71). Richard Miron also testified that although Selvaggi had pre-printed forms listing the finance charge as a term of agreement, the defendants refused to use the forms. (Transcript, p. 66). Richard Miron further testified that he would not use the price lists provided by the plaintiffs, since they also contained a provision regarding finance charges, and that he never told the plaintiffs that he would pay a finance charge. (Transcript, pp. 66-67).
Upon conflicting evidence, it is peculiarly within the province of the trier of fact to judge the credibility of the witnesses and to draw proper inferences. DeLuca v. C. W.Blakeslee Sons Inc., 174 Conn. 535, 547, 391 A.2d 170 (1978). Therefore, for these reasons, these findings of fact should not be disturbed. It further appears from reviewing the motion to correct and the exceptions to these findings that the plaintiffs are attempting to substitute their own version of the facts for those found by the referee, a practice discountenanced inArgentinis v. Gould, 23 Conn. App. 9, 19, 579 A.2d 1078, rev'd on other grounds, 219 Conn. 151, 592 A.2d 375 (1991). Accordingly, these findings of fact cannot be disturbed, as they are supported by the evidence.
The plaintiffs also except the finding of fact stated in paragraph sixteen of the ATR report. That paragraph provides: "There is due and owing to the plaintiffs by the defendants the sum of $22,039.16." The plaintiffs argue that this finding should be replaced by the plaintiffs' requested findings in paragraphs fourteen through seventeen of the motion to correct. The requested findings include amounts which would have accrued had there been an applicable finance charge. The plaintiffs also CT Page 12399 argue that the finding of fact in paragraph sixteen of the ATR report was contrary to and unsupported by the evidence.
Selvaggi testified that the total dollar amount of work performed by the plaintiffs for the defendants from September of 1988 to July of 1995 is $126,618.68, not including any finance charges. (Transcript, pp. 31, 40-41). Selvaggi also testified that the defendants have paid $104,579.52 towards that balance. (Transcript, pp. 32, 40).
Based upon the finding of the ATR that the parties never agreed to apply a finance charge to the defendants' outstanding balance, which is supported by the evidence, clearly the difference between what the defendants owed the plaintiffs and what the defendants paid the plaintiffs between September of 1988 and July of 1995 equals $22,039.16, as found by the ATR. Therefore, finding of fact number sixteen is supported by the evidence, and the plaintiffs' exception is denied.
The plaintiffs also argue that the ATR erred in failing to find the facts referred to in paragraphs eighteen through twenty-one of their motion to correct. The proposed findings of fact in paragraphs eighteen through twenty-one of the plaintiffs' motion to correct seek to have included facts concerning the $79,000 worth of bounced checks delivered by the defendants to the plaintiffs as payment for services from December of 1991 through June of 1994. These checks were admitted at trial. (Plaintiffs' Exhibit F). The plaintiffs argue that the undisputed fact that these checks exist means that the plaintiffs have proved their cause of action in count three of their complaint. The plaintiffs also argue that the existence of the bounced checks constitutes crucial evidence of the agreement to pay finance charges. The plaintiffs contend that one does not issue $79,000 worth of checks unless one is in debt to someone in that amount.
Selvaggi testified that including finance charges, the outstanding amount owed to the plaintiffs by the defendants was $101,824.19. (Transcript, p. 32).[4] Thirteen checks totaling $79,000 were received by the plaintiffs from December 30, 1990 through June 9, 1994. (Transcript, p. 34). According to Selvaggi, all of these checks bounced and the defendants have not issued good checks to cover the amounts owed. (Transcript, pp. 34, 36, 51). The $79,000 worth of bounced checks are part of the $101,824.19 claimed to be owed to the plaintiffs. (Transcript, p. 35). Richard Miron testified, however, that all but three of the CT Page 12400 thirteen checks were subsequently made good by the defendants. (Transcript, pp. 67-68). Richard Miron also testified that the three checks that were not made good were large checks written at the end of the year in 1990, 1992 and 1993 at the request of Selvaggi so that Selvaggi could show a loss on the plaintiffs' books for those years. (Transcript, pp. 68-69). Selvaggi denied any such agreement. (Transcript, p. 51)
Although the plaintiffs have submitted checks which allegedly have not been honored by the defendants' bank, it is not an admitted or undisputed fact that the plaintiffs are entitled to the amounts claimed on the checks. There is conflicting testimony concerning which, if any, of the checks have been made good by the defendants. Therefore, the court may not find that the $79,000 amount constitutes an admitted or undisputed fact, and the additional findings of fact proposed in paragraphs eighteen through twenty-one of the plaintiffs' motion to correct cannot be incorporated into the ATR report.
 2. Defendants' Exceptions
The defendants' exceptions[5] to the ATR report seek to reform findings of fact numbers eleven, fourteen, fifteen and sixteen on the ground that they do not reflect the fact that Ann Miron left Lakeview after the defendants' divorce in March of 1992. Each of those paragraphs refer to the "defendants" in addressing the outstanding balance owed to the plaintiffs for the period from 1988 through 1995.
Paragraph three of the ATR report states: "The defendants, Richard Miron and Ann Miron were from sometime [sic] in 1974 to March 6, 1992 the proprietors of Lakeview Monument Company, with an office at 952 Hallett Street, Bridgeport, Connecticut." In paragraph five of the ATR report, the ATR found: "Following a divorce in 1992 the defendant, Ann M. Miron left the business." When this paragraph is read in conjunction with later findings of fact which refer to "the defendants," it is clear that the ATR has already found in effect that Ann Miron is liable only for the outstanding balance owed to the plaintiffs by Lakeview for the period ending on March 6, 1992. Therefore, no material facts were found without evidence, the ATR did not fail to find admitted or undisputed facts, and facts have not been found in such doubtful language that their real meaning does not appear in paragraphs eleven, fourteen, fifteen or sixteen of the ATR report. Accordingly, the defendants' exceptions are denied. CT Page 12401
 B. Objections the ATR Report
"A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted." Practice Book § 440, now Practice Book (1998 Rev.) § 19-14. Section 440 [now Practice Book (1998 Rev.) § 19-14], however, cannot be used to attack findings of fact. IroquoisGas Transmission System v. Mileski, 43 Conn. App. 47, 52,682 A.2d 140, cert. denied, 239 Conn. 936, 684 A.2d 707 (1996). The trial court is authorized to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee. In a matter heard before an attorney trial referee, the trial court's nondelegable judicial duty to render judgment turns on its ability to determine the facts found by the attorney trial referee. National ElevatorIndustry v. Scrivani, 31 Conn. App. 728, 732, 626 A.2d 1332
(1993), rev'd on other grounds, 229 Conn. 817, 644 A.2d 327
(1994). If the court finds material errors in the attorney trial referee's factual findings, it may, under these circumstances, order further proceedings. Id., 732-33.
Where legal conclusions are challenged, the court must determine whether they are legally and logically correct and whether they find support in the facts found by the referee. Where evidence is in conflict, its probative force is for the trier of fact to determine. Bernard v. Gershman,18 Conn. App. 652, 656, 559 A.2d 1171 (1989). In addition to determining whether "there was . . . evidence to support the attorney trial referee's factual findings," the task of the reviewing court is to decide whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. MorningsideGardens. Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991). See also State Bankof Westchester v. New Dimension Homes of Connecticut, Inc.,38 Conn. App. 491, 497, 661 A.2d 119 (1995) (any legal conclusions reached by an attorney trial referee have no conclusive effect)
 1. Plaintiffs' Objections
The plaintiffs argue that the conclusions reached by the ATR on counts one through four of the plaintiffs' complaint could not CT Page 12402 properly be reached on the basis of the subordinate facts found and the evidence presented at trial. The ATR concluded that the plaintiffs were entitled to judgment on counts one and two of their complaint, for work performed by the plaintiffs for the defendants from 1988 through 1995 in the amount of $126,618.68, minus $104,579.52 paid by the defendants. Selvaggi did not dispute these figures, assuming no finance charges were assessed. (Transcript, pp. 31-21, 40-41). In addition, the defendants did not deny that they owed the plaintiffs the amount which would be the difference between $126,618.68 and $104,579.52. (Transcript, p. 71). The salient issue was whether there had been an agreement between the parties to assess a finance charge as early as 1979 on the defendants' outstanding balance.
In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties. The mutual understanding must manifest itself by a mutual assent between the parties. Krondesv. O'Boy, 37 Conn. App. 430, 434, 656 A.2d 692 (1995).
The facts as found by the ATR show that there was no mutual understanding between the parties that a finance charge was going to be assessed for payments delinquent past thirty days. Richard Miron testified that he and Selvaggi spoke on numerous occasions about the finance charge, which Richard Miron told Selvaggi he would not pay. (Transcript, p. 71). According to Richard Miron, the parties never reached an agreement on this issue, but rather were at an impasse. (Transcript, p. 71). Based on this and other evidence received at trial, the ATR could reasonably conclude that there was never an agreement between the parties that a finance charge would be assessed. Therefore, the ATR's conclusion that $22,039.16, the difference between $126,618.68 and $104,579.52 without finance charges, is due the plaintiffs is supported by the facts and applicable law. Accordingly, plaintiffs' objections to the ATR's legal conclusions regarding counts one and two of their complaint is hereby overruled.
The ATR found in favor of the defendants on counts three and four of the plaintiffs' complaint. In count three, the plaintiffs seek payment on the thirteen bounced checks totaling $79,000. In count four, the plaintiffs allege a violation of CUTPA based on the allegations in count three. The ATR did not make any findings as to whether all or part of the $79,000 is owed by the defendants to the plaintiffs. Furthermore, the ATR did not make any findings regarding whether all or part of the $79,000 is CT Page 12403 included in the $126,618.68 alleged in counts one and two. There was conflicting evidence concerning whether the defendants had made good on part of this amount, and if so, how much had been paid. (Transcript, pp. 34, 36, 51, 67-69). Resolution of conflicting facts is a task for the trier of fact, not this court on review. DeLuca v. C.W. Blakeslee Sons Inc., supra,174 Conn. 547. Accordingly, the issues raised in count three of the plaintiffs' complaint are hereby remanded to the ATR for further review. Furthermore, since the issues raised in count four are derivative of the claims raised in count three, the CUTPA issue must also be remanded to the ATR for further review.
The plaintiffs next argue in their objections that the ATR erred in denying the plaintiffs' motion to correct. This is not a proper ground upon which to object to the acceptance of the ATR report. Rather, it is a basis for filing exceptions to the findings of fact, which exceptions were considered above. In the context of an objection to acceptance of the ATR report, however, the court does not determine whether subordinate facts are found correctly. This court's task is to determine whether the conclusions of fact and law by the referee are legally and logically correct and whether they find support in the facts found by the referee. Kallas v. Harnen, Superior Court, judicial district of Danbury, Docket No. 303611 (May 10, 1996, Stodolink, J.).
The plaintiffs also argue that the conclusions of fact found in paragraphs three, five, ten, twelve, thirteen, sixteen, seventeen and eighteen of the report could not be properly reached on the basis of the subordinate facts found and the evidence presented at trial. An appellate court reviews conclusions based on subordinate facts found, even if labeled conclusions of fact, to the same extent that it reviews conclusions of law. Murphy v. Buonato, 42 Conn. App. 239, 243,679 A.2d 411 (1996), aff'd, 241 Conn. 319, 686 A.2d 320 (1997).
Paragraph three of the ATR report states: "The defendants, Richard Miron and Ann Miron were from sometime in 1974 to March 6, 1992 the proprietors of Lakeview Monument Company, with an office at 952 Hallett Street, Bridgeport, Connecticut." This is supported by subordinate facts. The plaintiffs submitted as evidence a copy of the defendants' trade name certificate on file with the town of Bridgeport. (Plaintiffs' Ex. A). The certificate, signed by both of the defendants and dated May 10, 1974, states that the name of their business is Lakeview Monument CT Page 12404 Company located at 952 Hallett Street in Bridgeport, Connecticut. (Plaintiffs' Ex. A). Other facts indicating that Ann Miron was a proprietor of the defendants' business, such as a desk and nameplate bearing her name and numerous telephone directory advertisements listing her as a proprietor were received by the ATR at trial. (Transcript, pp. 10, 13-14, 17, 101). Additional facts received at trial support the contention that Ann Miron was no longer a proprietor after the defendants' divorce on March 6, 1992. (Transcript, pp. 69-70).
Paragraph five of the ATR report states: "Following a divorce in 1992 the defendant, Ann M. Miron left the business." This finding is supported by evidence that Ann Miron's name was removed from the telephone directory advertisements, which until 1992 listed her as a proprietor of the defendants' business. (Plaintiffs' Ex. B; Transcript, p. 80). It is also supported by the testimony of Richard Miron, who stated that Ann Miron had nothing to do with the business after the defendants' divorce. (Transcript, p. 70).
Paragraph ten of the ATR report states: "At no time during the period 1976 to 1992 did the defendant make any attempt to deny Ann M. Miron's proprietary interest in Lakeview Monument Company." This conclusion is supported by the following subordinate facts. The plaintiffs began doing business with the defendants in 1976. (Transcript, p. 8). Ann Miron left the business in 1992. (Transcript, p. 70). Between 1976 and 1992, Ann Miron was periodically listed in telephone directory advertisements as a proprietor of Lakeview Monument Company, she had a desk with a name plate at the business, and she was listed on the trade name certificate. (Transcript, pp. 10, 13-14, 17, 101).
Pursuant to General Statutes § 34-53, all partners in a partnership are liable jointly and severally for the wrongful acts or omissions of any partner acting in the ordinary course of the business under General Statutes § 34-51. This liability extends to a person who, by words or conduct, represents him or herself to be a partner in the partnership where the representations are relied upon in good faith by a third party. General Statutes § 34-54 (1). Under these circumstances, the person represented as a partner may be made liable as if he or she was an actual partner. General Statutes § 34-54 (1)(a). In addition, the person represented to be a partner acts as an agent of the partnership and his or her actions become binding CT Page 12405 upon the partnership. General Statutes § 34-54 (2). Based on the subordinate facts, the ATR did not err in finding that Ann Miron was a partner in Lakeview up until the defendants' divorce in 1992. Therefore, the ATR's factual conclusions are supported by the subordinate facts and the law applicable for the period covering the plaintiffs' claims.[6]
Paragraph twelve of the ATR report states: "On February 16, 1979 the plaintiffs unilaterally added finance charges of 1.5% per month." Paragraph thirteen states: "The defendants never agreed to this charge and has [sic] not paid this charge." Paragraph seventeen states: "There was no agreement by the parties to include finance charges." These findings are supported by the following subordinate facts. Selvaggi testified that if the defendants were delinquent past thirty days in paying their outstanding bills, the plaintiffs would assess a finance charge by listing such charge on the monthly statement and price sheets. (Transcript; pp. 18, 23, 26). When asked on cross examination whether he unilaterally instituted a finance charge, Selvaggi responded in the affirmative. (Transcript, pp. 47-48). The defendants never agreed to pay the finance charges, but rather told the plaintiffs that they would not pay finance charges. The defendants also refused to use the plaintiffs' forms containing a provision for finance charges. (Transcript, pp. 66-67, 71). Based on these subordinate facts, the plaintiffs' argument that the defendants impliedly agreed to pay finance charges is without merit. Therefore, the ATR's conclusions in paragraphs twelve, thirteen and seventeen are supported by the subordinate facts and applicable law.
Paragraph sixteen of the ATR report states: "There is due and owing to the plaintiffs by the defendants the sum of $22,039.16." This factual conclusion is supported by the subordinate facts, as discussed above. Therefore, the ATR was correct in recommending that judgment enter for the plaintiffs on counts one and two of their complaint in this amount.
Paragraph eighteen of the ATR report states: "The defendants did not violate the CUTPA statute." However, the ATR failed to find facts regarding the third and fourth counts of the plaintiffs' complaint, and for the reasons stated above, the issues raised by these counts must be remanded to the ATR for further proceedings. Thus, the plaintiffs' objection to counts three and four sustained. CT Page 12406
The plaintiffs also object to the acceptance of the ATR report on the ground that the ATR "erred in failing to state the claims made by the plaintiff before him." This is not an issue properly raised on an objection to acceptance of an ATR report, and therefore is overruled.
 2. Defendants' Objections
The defendants[7] argue that the ATR's summary denial of the defendants' motion to correct was in error. As mentioned above, this is not a proper ground to raise in the context of an objection to the acceptance of the ATR report. The objection on this ground is, therefore, overruled.
The defendants argue that the ATR wrongly admitted copies of the defendants' telephone directory advertisements. At trial, the defendants objected to the admission of the advertisements on the grounds of hearsay and the best evidence rule. (Transcript, pp. 15-16). The defendants request that the telephone directory advertisements be disregarded.
In order for an error in an evidentiary ruling to be a reversible error, the court's ruling must be both wrong and harmful. Hensley v. Commissioner of Transportation,211 Conn. 173, 184, 558 A.2d 971 (1989). An error is considered harmless where other evidence presented sufficiently supported the court's judgment. Connecticut Limousine Service. Inc. v. Powers,7 Conn. App. 398, 401, 508 A.2d 836 (1986).
The evidence in question was presumably admitted to demonstrate that the plaintiffs considered both Ann and Richard Miron to be proprietors of Lakeview Monument Company. There were other, independent grounds upon which the plaintiffs formed this opinion. Indeed, when asked what effect seeing the telephone directory advertisements had on him, Selvaggi responded that they "told me they [the Mirons] were the proprietors, but I already knew that." (Transcript, p. 17). Selvaggi could have formed this opinion based on other "factors, such as the recorded trade name certificate and the fact that both of the defendants had office desks and name plates at Lakeview. Selvaggi also testifies that forty percent of the time, he received work orders from Ann Miron, as well as verbal orders from Ann Miron on rush jobs. (Transcript, pp. 43-45). There was also testimony from Richard Miron, who described how over the years he listed Ann Miron as a proprietor of Lakeview, but after the divorce in 1992 CT Page 12407 discontinued doing so. (Transcript, pp. 58-59, 80-81). Therefore, even if the ATR erred in admitting the telephone directory advertisements as Plaintiffs' Ex. B, based upon all of the other evidence which indicated that both of the defendants were proprietors of Lakeview until 1992, such error was harmless.
The defendants also argue that since the ATR found that Ann Miron left the business subsequent to the defendants' divorce in 1992, she should not be liable for business dealings conducted between Richard Miron and the plaintiffs. As stated previously, the ATR found, based on the evidence presented at trial, that Ann Miron left the defendants' business in 1992. Therefore, the ATR in effect has recommended that Ann Miron be held liable only for any debt incurred by the defendants from December of 1988 through March 6, 1992. The defendants argue that because the defendants paid over $104,000 from 1988 through 1995, and the plaintiffs applied payments to the most delinquent charges, the debt due and owing at the time Ann Miron left the business, approximately $50,000, has been paid. Therefore, the defendants argue, Ann Miron owes nothing, and the remainder of the $22,039.16 should be paid by Richard Miron exclusively.
While the defendants may be correct in their assertion that their debts to the plaintiffs prior to 1992 have been paid, they have failed to prove their argument. Even if Ann Miron is not liable for any debt accrued after March 6, 1992, she may still be liable for debt which remains unpaid from before the defendants' divorce. The defendants have failed to demonstrate conclusively that the payment of $104,579.52 between 1988 and 1995 wiped out any debt for which Ann Miron may be liable. It is especially difficult to determine whether the defendants did make good on all of their debt to the plaintiffs prior to March 6, 1992, considering that many of the bounced checks which may or may not have been made good by the defendants were issued before the defendants were divorced. (Plaintiffs' Ex. F). Accordingly, the ATR did not err in failing to conclude that Ann Miron is free from any liability for the defendants' debt to the plaintiffs. Therefore, the defendants' objections based on the ATR's failure to determine that Ann Miron is not liable are overruled.
In summary, the plaintiffs' and the defendants' exceptions to the ATR report are denied; the plaintiffs' objections to the ATR report are overruled as to counts one and two but sustained as to counts three and four of the plaintiffs' complaint; and the defendants' objections to the ATR report are overruled. CT Page 12408
Accordingly, the court hereby adopts the report of the ATR in regards to counts one and two of the plaintiffs' complaint, and holds that the defendants owe the plaintiffs $22,039.16. However, this matter is remanded to the ATR for further proceedings to determine whether the plaintiffs are owed any portion of the $79,000 alleged due in count three of the plaintiffs' complaint. In addition, the ATR must determine whether, based on count three, a violation of CUTPA has been proved as alleged in count four.
Melville, J.