[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried to the court, the plaintiff, Kamco Supply Corporation of New England, formerly known as Colony Lumber Company, Inc. (Kamco), seeks to recover for building materials it sold pursuant to a contract with the defendant, Cataldo Construction Company, Inc. (Cataldo). Kamco supplied the materials at issue in connection with a contract Cataldo had with Salvatore Marino and Patricia Simone. Cataldo was to furnish materials and construct a home for Marino and Simone on land they had purchased on Erskine Road in Stamford, Connecticut. The cost of materials that Kamco shipped to the job site totaled $73,885.33. Cataldo does not dispute the fact that Kamco supplied the materials or the amount of the charges but denies that it is responsible for paying Kamco for the materials and raises two special defenses. In its first special defense, Cataldo claims that it is not liable for payment because it contracted with Kamco solely in its capacity as agent for disclosed principals, Marino and Simone. In its second special defense, Cataldo claims that, because Kamco had a mechanic's lien on the property and later released that lien in exchange for a $50,000 payment by Marino and Simone, which was partial payment rather than full payment, Kamco impaired Cataldo's ability to collect payment from Marino and Simone, the principal obligors, and therefore it should not be liable to Kamco for the remaining balance of approximately $23,000. CT Page 14639
The evidence produced at trial disclosed the following. Kamco extended credit to Cataldo based on a credit application that Cataldo filed with Kamco. The October 5, 1997 application was made under the heading "corporation" rather than under the heading "individual/homeowner." It was filed in the name of Cataldo Construction, Inc., listed creditors of Cataldo Construction, Inc., as credit references, listed the principles of the company as Philomena Mallozzi, president, and Dora Cataldo, vice president, and was signed by Dora Cataldo. The application provided that all past due amounts would be subject to a service charge of one and one-half percent per month, which is an annual percentage rate of eighteen percent, along with collection costs, court costs, and sheriff's and attorney's fees. Although the current construction location listed on the application was "Ashler Village/Wallingford," Kamco's comptroller testified at trial that Kamco determined Cataldo's credit worthiness and continued to extend credit to Cataldo based on the information Cataldo provided in the October 5, 1997 application. Over the course of their business relationship, Kamco supplied materials to Cataldo for approximately six jobs. Cataldo paid Kamco for five of those six jobs. The materials that Cataldo has not paid for are those that were ordered to construct the Marino and Simone house. The materials for that job were delivered to 361 Erskine Road, however, Kamco issued all sixteen invoices relating to that job to Cataldo at its 80 West Park Place, Stamford, Connecticut address. There was no testimony, from either party, that Cataldo ever complained about the fact that the invoices were issued and sent to it, rather than to Marino and Simone. Kamco's comptroller also testified that no one from Cataldo ever indicated to him that Cataldo was acting as an agent for the property owners and that it was Kamco's policy to require that a credit application be filled out by the person who was actually to be responsible for the bill. Further, Salvatore Marino testified that neither he nor his wife represented to Kamco that Cataldo was acting as their agent to purchase building supplies from Kamco.
After a dispute arose between Cataldo and the property owners, Cataldo returned some of the materials ordered for the Erskine Road job to Karaco and Kamco credited the Cataldo account $824.73. Cataldo, however, did not make any payments for goods it ordered from Kamco for that job. When the Cataldo account became past due, Kamco placed a mechanic's lien on the Erskine Road property to secure the full value of the building materials supplied for the job, $73,885.33. Kamco later sought to foreclose that lien. On March 31, 1999, Kamco reached a settlement with Marino and Simone whereby they paid Kamco the sum of $50,000 and Kamco released its lien on the property. The parties executed releases in connection with their settlement agreement, with Kamco expressly reserving its right to pursue the balance of payment from Cataldo. Kamco now seeks payment from Cataldo for the sum of $32,112.05, which is comprised of a balance of $23,060.60 plus interest totaling $6,486.45, plus attorney fees totaling CT Page 14640 $2,625.00, as well as costs.
To establish its special defenses, Cataldo presented copies of the following documents: a Kamco bill that referenced the property at Erskine Road, the $50,000 check that the property owners issued to Kamco, and the mechanic's lien that was filed on the Erskine Road property. Cataldo points to the fact that Kamco accepted the $50,000 check, which noted that it was "payment in full" for Kamco, as evidence of the fact that an agency relationship existed between Cataldo and the property owners and that Kamco had notice that Cataldo contracted with Kamco solely on that basis. Additionally, Cataldo points to the following language contained in Kamco's mechanic's lien, which was signed by Kamco's president, as further evidence of the fact that the existence of the agency relationship between Cataldo and the property owners was fully disclosed to Kamco: "Kamco Supply Corp. of New England . . . in accordance with a certain contract between the undersigned and Cataldo Construction Inc.,contractor and agent for Salvatore Marino and Patricia Simone, furnished materials . . ." (Emphasis added.)
The general rule is that principals may act through agents, and principals are liable for the authorized acts of their agents.Rich-Taubman Associates v. Commissioner of Revenue Services, 236 Conn. 613,619, 674 A.2d 305 (1996). It is well settled, however, that "where an agent contracts in his own name, without disclosing his representative capacity, the agent is personally liable on the contract." Murphy v. DellCorp., 184 Conn. 581, 582, 440 A.2d 223 (1981). To avoid personal liability on a contract entered into by an agent on behalf of a principal, it is incumbent upon the agent to disclose not only the fact that he is acting in a representative capacity, but also the identity of his principal. Connecticut Limousine Service, Inc. v. Powers,7 Conn. App. 398, 402, 508 A.2d 836 (1986). The person dealt with is not bound to discover or inquire about these facts. Id. "The burden of proving agency is on the party asserting its existence." New EnglandWhalers Hockey Club v. Nair, 1 Conn. App. 680, 683, 474 A.2d 810 (1984). The questions as to whether an agency relationship exists and whether that fact has been disclosed to the party contracting with the agent are both questions of fact. Id.; Murphy v. Dell Corp., supra, 582. "The authority of an agent cannot be proven by the declarations of the agent."E. Paul Kovacs Co. v. Blumgarten, 150 Conn. 8, 13, 183 A.2d 844
(1962).
Security is defined as "[c]ollateral given by [a] debtor to secure [a] loan." Black's Law Dictionary (6th Evidence. 1990) "To `impair' collateral means to injure it or allow it to deteriorate in value."Federal Home Loan Mortgage Corp. v. Estate of Michael Santoro, Superior Court, judicial district of Waterbury, Docket No. 111833 (April 21, CT Page 14641 1995, Vertefeuille, J.).
The facts presented to the court in this case are very similar to those of Diamond Match Co. v. Crute, 145 Conn. 277, 141 A.2d 247 (1958), where the president of a corporation ordered lumber from a supplier without disclosing that the customer was the corporation, rather than its president. The court found that the president was personally liable for the amount owed. In that case, the credit application, the account, the invoices, the monthly statements and the deliveries were all issued in the name of the defendant, the president of the corporation, rather than in the name of the corporation itself. Further, the court found the fact that corporate checks were used to pay the supplier to be insufficient to establish that the supplier had notice that the materials were purchased on behalf of the corporation. The court in that case found it to be significant that the defendant did not attempt to have the plaintiff change the name on the account or bill the alleged principal, instead of himself, until financial difficulties arose and the plaintiff instituted suit against him.
The court finds Diamond Match Co. v. Crute, supra, 145 Conn. 277, to be dispositive of this case. Although the materials were shipped to the Erskine Road property, the credit application and the invoices were issued, without protest from Cataldo until Kamco filed suit against it, in Cataldo's name rather than in the property owners' names. Like the court in Diamond Match Co. v. Crute, supra, 278-79, this court finds the partial payment by Marino and Simone to be immaterial to whether or not Cataldo was acting as an agent when it contracted with Kamco. This court is also unpersuaded that the use of the word "agent" in Kamco's mechanic's lien demonstrates that Kamco had knowledge that an agency relationship existed between Cataldo and the property owners or that the property owners were to be held liable as principals on Kamco's contract with Cataldo. Further, although Cataldo claims that it was acting as an agent, Kamco's comptroller and Marino both gave credible testimony that no agency relationship existed between Cataldo and the property owners.
Based on the weight of the evidence presented, the court concludes that Cataldo did not establish its first special defense, that it contracted with Kamco solely in the capacity of an agent, and Cataldo is therefore liable for the outstanding balance. Further, because Cataldo. has failed to establish that it contracted with Kamco as an agent and has submitted no evidence which establishes that its ability to collect from Marino and Simone for materials or services it has furnished to them has been impaired in any way, the court concludes that Cataldo has also failed t establish its second special defense.
The court finds, in view of all the evidence, that the plaintiff has CT Page 14642 satisfied the allegations of its complaint and the defendant has failed to establish its burden of proving its special defenses. Accordingly, the plaintiff is entitled to damages in the amount of $29,547.05 plus reasonable attorney's fees and costs.
So ordered.
BY THE COURT
Philip E. Mancini, Jr. Judge Trial Referee